[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 4, 2004**
**THOMAS  K. KAHN**
**CLERK**

No. 02-14044

D.C. Docket No. 01-01113-CV-TWT-1

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON,

Plaintiff,

versus

BARBARA KENNEDY, KATHERINE E.
KENNEDY, a minor, WILLIAM B.
KENNEDY, a minor,

Defendants-Appellants,

versus

MARY BETH KENNEDY, individually and
as Executrix of the Estate of Clint M.
Kennedy, deceased, BRIDGET KENNEDY
RICHARDS, PRESLEY KENNEDY WILSON,

Defendants-Appellees.

Appeal from the United States District Court for the
Northern District of Georgia

**(February 4, 2004)**

Before EDMONDSON, Chief Judge, KRAVITCH and GIBSON[*], Circuit Judges.

JOHN R. GIBSON, Circuit Judge:

Following the death of its insured, Clint Kennedy, Liberty Life Assurance Company filed this interpleader action asking the district court to determine the conflicting claims for life insurance benefits made by Barbara N. Kennedy and Mary Beth Kennedy. Mr. Kennedy obtained this life insurance through his employer, Georgia-Pacific Corporation. The policy is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, or ERISA.

Barbara Kennedy was Clint Kennedy's second wife. They were married from 1983 to July of 1991, and she asserts a claim to the benefits on her own behalf and on behalf of their minor children, Katherine and William. Mary Beth Kennedy was Clint Kennedy's third wife and was married to him from July of 1991 until the time of his death. She asserts a claim to the benefits on her own behalf and on behalf of Mr. Kennedy's adult children from his first marriage, Bridget Kennedy Richards and Presley Kennedy Wilson, along with Katherine and William. The district court granted summary judgment to Mary Beth Kennedy[1]

_____

*Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[1]The district court's order granted summary judgment to the "Mary Beth Kennedy Claimants," which includes Mary Beth Kennedy, Bridget Kennedy Richards, and Presley

and directed that she receive 25% of the benefits and Mr. Kennedy's four children each receive 18.75% of the benefits. We affirm.

BACKGROUND

Clint Kennedy was employed by Georgia-Pacific Corporation for more than twenty-five years. His last position was that of Executive Vice President and, by virtue of that position, he participated in the company's executive life and personal accident insurance programs. At the time of his accidental death on October 7, 2000, those policies provided benefits of $1,000,000 in life insurance and $300,000 in accident insurance.

Mr. Kennedy completed a single designation of beneficiary form for these policies on March 14, 1988, naming his then-wife Barbara as the sole beneficiary if she were still living at the time of his death. In 1991, when Clint and Barbara Kennedy divorced, they executed a settlement agreement in which Mr. Kennedy agreed to maintain his employer-sponsored life insurance, with Barbara Kennedy named as trustee for their children as beneficiaries of 50% of the total death benefits. However, the agreement allowed Mr. Kennedy to reduce Katherine's and William's share to 18.75% each if he remarried. Mr. Kennedy did not amend the

Kennedy Wilson. The "Barbara Kennedy Claimants" include Barbara H. Kennedy, individually, and as the trustee for The Katherine Elizabeth Kennedy and William Blakely Kennedy Management Trusts. We will omit the word "Claimants" when we refer to Mary Beth Kennedy and Barbara Kennedy, but the parties remain the same as in the district court.

3

1988 designation of beneficiary form when he executed the settlement agreement, but the agreement did not obligate him to keep Barbara Kennedy as a beneficiary. Based on the 1988 designation of beneficiary form and the settlement agreement, Barbara Kennedy has asserted a claim for fifty percent of the insurance proceeds for herself and the remaining fifty percent to be shared equally by Katherine and William.

In 1993, after he had divorced Barbara Kennedy and married Mary Beth Kennedy, Mr. Kennedy executed a will that remained in place without modification until his death. The will included the following provision:

### ITEM FIVE

Assuming the named beneficiary of said life insurance is my estate, I hereby give and bequeath all the proceeds of life insurance provided to me by my employer to the following persons:

(a) To my wife Mary Beth Kennedy, one-fourth (25%) outright;

(b) To each of the two (2) children of my first marriage, Bridget and Presley, or their living lineal descendants, per stirpes, three-sixteenths (18.75%) respectively;

(c) To each of the two (2) children of my second marriage, Katherine and William, or their living lineal descendants, per stirpes, three-sixteenths (18.75%) respectively; provided however that if either of said children is less than thirty (30) years old at the time of my death his and/or her shares shall be distributed to their mother, Barbara Nowell Day Kennedy, to be held by her in separate trusts for said children respectively....

4

> If at the time of my death my estate is <u>not</u> the named beneficiary of all my employer-provided life insurance, then I hereby direct that the proceeds thereof be directed to the persons and in the manner hereinabove set forth insofar as the beneficiary designations on said insurance can be made consistent with the terms of this Will.

(Emphasis in original).

Because Mr. Kennedy never amended his 1988 designation of beneficiary form, his estate was not the named beneficiary of his Georgia-Pacific life insurance at the time of his death. The district court concluded that "Mr. Kennedy . . . did not make any effort to amend his beneficiary designation form on record with Georgia-Pacific . . . . [He] ignored a number of opportunities to complete a new Georgia-Pacific beneficiary designation form."

Georgia-Pacific routinely distributed a Summary Plan Description to provide a succinct explanation of the insurance program to the executives who participated in it. The Summary Plan Description for these policies that was in effect at the time of Mr. Kennedy's death included a section entitled "Naming Your Beneficiary."[2] It began:

> There is a special beneficiary designation form for this executive program. Your beneficiary is the person, estate, trust, organization, etc., which you designate as such on the form. Unless you have made

---

[2]Although Liberty Life issued the Georgia-Pacific executive policies in effect at the time of Mr. Kennedy's death, the January 1995 Summary Plan Description identifies another company as the issuer. Georgia-Pacific's Executive Vice President of Human Resources confirmed that the 1995 Summary Plan Description applied to the Liberty Life policies and was current at the time of Mr. Kennedy's death.

an irrevocable assignment . . . , you can change your beneficiary at any time without the consent of your present beneficiary. To do so, contact the Employee Benefits Department for the correct form.

Although the record indicates that it was Georgia-Pacific's policy to distribute a Summary Plan Description to its executives when they entered the program, there is no conclusive evidence that Mr. Kennedy received or retained a copy of any version of that document.

The Plan policy itself – the Georgia-Pacific Group Term Life Insurance Policyholder's Document – included separate sections concerning the naming and changing of beneficiaries. As to the latter, it stated:

An employee may change the Beneficiary. Any change requires acceptable written notice to [Georgia-Pacific]. The notice can be on forms approved by [Georgia-Pacific]. The change shall be filed with [Georgia-Pacific] and will take effect from the date the employee signed the notice. If a notice is not signed, it will be void.

The employee does not have to be living at the time of such filing. [Liberty Life] will not be liable for any payments We make before We receive the change.

The record contains no evidence that Mr. Kennedy was given a copy of the Policyholder's Document.

Liberty Life designated Employers Insurance of Wausau to be the Plan Administrator of this group executive life and personal accident insurance plan. According to the Summary Plan Description, "The Plan Administrator has full discretionary authority to administer and interpret this plan. . . ."

6

Mr. Kennedy died on October 7, 2000, when an all-terrain vehicle fell off a truck and onto him. Within weeks of his death, Georgia-Pacific prepared proof-of-death forms on the life insurance and the two personal accident insurance policies. These forms continued to list Barbara Kennedy as the beneficiary because the only written direction Mr. Kennedy had given Georgia-Pacific about these policies was his March 14, 1988 designation of beneficiary form. When Mary Beth Kennedy's counsel contacted Georgia-Pacific a short time later to assert her claim to the benefits, Georgia-Pacific referred the matter to Wausau. Wausau engaged the parties in discussions about their conflicting claims, which led to the parties' agreement that Barbara Kennedy would be the trustee of 37.5% of the insurance proceeds on behalf of Katherine and William Kennedy. This is the amount they would have received if the proceeds had been distributed in accordance with Mr. Kennedy's will. Wausau declined to exercise its authority to choose between the conflicting claimants, however, which led to Liberty Life filing this interpleader action.

After filing this action, Liberty Life was permitted to deposit $1,376,858.29 into the registry of the court, reimbursed $10,000 for its attorneys' fees and costs, and dismissed from the case. Consistent with the remaining parties' earlier agreement, the district court entered a consent order distributing 37.5% of the proceeds to The Katherine Elizabeth Kennedy and William Blakely Kennedy

7

Management Trust for their benefit in equal shares. The order also reflected the parties' agreement that the benefits payable under the personal accident policies would be treated in the same manner as the life insurance proceeds.[3]

On cross-motions for summary judgment, the district court granted Mary Beth Kennedy's motion and denied Barbara Kennedy's motion. The district court concluded that the controlling document was the policy rather than the Summary Plan Description, that the policy did not require Mr. Kennedy to use a company form to change beneficiaries, and that his will was effective in designating Mary Beth Kennedy, Bridget Kennedy Richards, Presley Kennedy Wilson, Katherine Kennedy, and William Kennedy as beneficiaries of the Georgia-Pacific policy. The court entered judgment awarding 25% of the interpleaded funds to Mary Beth Kennedy, 18.75% to Bridget Kennedy Richards, and 18.75% to Presley Kennedy Wilson. Barbara Kennedy appealed, asking that Katherine and William each receive an additional 6.25% of the proceeds (thereby increasing their share to 25% each) and that she receive the remaining fifty percent.

## I.

The district court was left to determine in the first instance how Mr. Kennedy's life insurance benefits would be distributed. Wausau, the Plan

---

[3]Because the parties have agreed that all of the insurance benefits should be governed by the life insurance documents and the law applicable to such, we will collectively refer to all of the benefits as life insurance proceeds.

8

Administrator, chose not to exercise its authority to decide between the competing claims to the benefits. We therefore review de novo the district court's interpretation of ERISA and its application of the law to the Plan provisions. Nat'l Auto. Dealers & Assocs. Retirement Trust v. Arbeitman, 89 F.3d 496, 498 (8th Cir. 1996).

Barbara Kennedy argues that the district court erred in allowing Mr. Kennedy's will to serve as a beneficiary designation because doing so improperly invoked state testamentary law. She relies on Egelhoff v. Egelhoff, 532 U.S. 141 (2001), in asserting that Georgia's testamentary law "relates to" the Georgia-Pacific Plan and is therefore preempted by ERISA, 29 U.S.C. § 1144(a) (2000).

In Egelhoff, the Court reviewed a Washington probate statute that affected beneficiaries of life insurance proceeds, employee benefit plans, annuities, and individual retirement accounts. The statute automatically revoked a designation of a spouse as the beneficiary of these assets upon divorce. The Court concluded that the statute was invalidated by ERISA's preemption section because it had an "impermissible connection" with ERISA plans. 532 U.S. at 147. As the Court explained, the state statute bound ERISA plan administrators to "a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." Id. Such a statutory scheme precluded these fiduciaries

from adhering to duties imposed on them by ERISA, namely to administer their plans in accordance with plan documents and make payments to beneficiaries designated by participants or by the terms of the applicable plan.

This case is not comparable to Egelhoff. The district court made no reference to any state law in concluding that Mr. Kennedy's will could serve as a beneficiary designation, nor does Barbara Kennedy offer any such reference. To the contrary, the district court examined the Plan and concluded that its language allowed Mr. Kennedy's will to serve as an alternative means of designating beneficiaries. The "Change of Beneficiary" subsection requires that a beneficiary provide a signed written notice to Georgia-Pacific that he or she desires to change beneficiaries, but it does not require the beneficiary to use a designated form. ("The notice can be on forms approved by [Georgia-Pacific].") (emphasis added). In fact, the subsection seemingly contemplates a will as an acceptable form of notice, because it further provides that the participant "does not have to be living at the time of such filing." In addition to being both written and signed, a will's provisions often come to light only after the maker's death. As the district court correctly noted in reaching its conclusion, it was "simply enforcing the provisions of the Plan."

Barbara Kennedy suggests that the will should not be given effect because to do so would raise the concerns addressed by ERISA's preemption clause,

10

namely uniformity and administrative efficiency. More specifically, she asserts that allowing the district court's decision to stand would force plan administrators of Liberty Life policies to inquire as to the existence of a will on every death benefit claim, thereby slowing the payment process and undermining ERISA's goal of simple, uniform administration. We will not join in such speculation, but we note that, even if Barbara Kennedy's prediction were accurate, the result would not be related in any way to ERISA. Insurers who offer employee benefit plans under ERISA are free to allow policyholders to change beneficiaries through more than a single means and, so long as the policyholders are informed of the means and the plan administrator complies with its fiduciary obligations, ERISA is not implicated.

The district court did not err in determining that ERISA preemption does not apply to the interpretation of the Georgia-Pacific Plan.

## II.

Barbara Kennedy also argues that the district court erred by concluding that the Summary Plan Description and the Plan contain conflicting provisions with respect to changing beneficiaries, and concluding that because Mr. Kennedy did not rely on the provisions of the Summary Plan Description, the Plan language governs the beneficiary designation. She asserts that no such conflict exists, and that both documents require use of an appropriate form to change beneficiaries.

11

She further asserts that Mr. Kennedy did rely on the Summary Plan Description, and that its directive to use a prescribed beneficiary designation form was reinforced by Georgia-Pacific human resources personnel and by Mr. Kennedy's attorney.

The record reveals that the change of beneficiary sections of the Summary Plan Description and the Plan are not irreconcilable, and thus we need not decide which document controls. While the Summary Plan Description directs participants to "contact the Employee Benefits Department for the correct form" to change beneficiaries, the Plan describes more generally the kinds of writings that could effectuate a change. In the context of an employee benefit plan, a conflict would exist if the employee were somehow misled by the Summary Plan Description, which is a document intended to be accurate and comprehensive and which reasonably apprises an employee of his or her rights under the Plan. McKnight v. S. Life & Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir. 1985). The different language did not create a conflict in this case. The Plan clearly allows Mr. Kennedy's will to serve as a valid alternate beneficiary designation. The Summary Plan Description does not preclude an alternate form because it does not identify "the correct form," but rather refers the participant to Georgia-Pacific's Employee Benefits Department.

The record does not support Barbara Kennedy's suggestion that Georgia-Pacific reinforced the Summary Plan Description's purported requirement that Mr. Kennedy use one form exclusively if he wanted to change beneficiaries. In 1991, Georgia-Pacific provided Mr. Kennedy with four different beneficiary designation forms, which apparently applied to various benefit plans in which he was enrolled, along with a cover memorandum describing them as the "appropriate change forms" if he wished to change beneficiaries. In 1997 (after he was divorced from Barbara Kennedy), Georgia-Pacific sent him an annual confirmation that he continued to be enrolled in its executive life and personal accident program. The letter indicated that the company's records showed his beneficiary as "Barbara N. Kennedy, wife, if living; otherwise, Mary June Kennedy, . . ." It provided no direction for changing his beneficiary, nor did it suggest that he prepare a new form to clarify that Barbara Kennedy was no longer his wife. Finally, when Georgia-Pacific's executive vice president of human resources spoke with Mr. Kennedy in the summer of 2000 to ask if he had his beneficiary designations as he wanted them,[4] they did not discuss specifics, and she offered him no directions for changing beneficiaries.

---

[4]This executive testified that she approached Mr. Kennedy because she had heard that he was divorcing, and it was her practice to make sure that employees in that situation "had all their beneficiaries in order."

13

When Mr. Kennedy consulted an attorney to prepare his will in 1993, they discussed whether Mr. Kennedy could comply with his divorce agreement with Barbara Kennedy if he changed the beneficiaries of his Georgia-Pacific life insurance without her consent. The attorney advised him that he could not, and he drafted a letter for Mr. Kennedy to send to her seeking consent. Mr. Kennedy did not send that letter. The attorney explained that he recommended this course of action "in order to stay in compliance with the divorce agreement. [Mr. Kennedy] was of course legally free to change his beneficiary at any time." The attorney did not know whom Mr. Kennedy had designated as beneficiaries for these policies as of 1993, and he believed it was necessary to include beneficiary language in the will in case Mr. Kennedy did not prepare a new form. While he originally suggested that Mr. Kennedy prepare new designation forms to conform with the beneficiary selections he was making in the will, he understood that the will "may have given him a sense that it was all taken care of." The record does not support Barbara Kennedy's assertion that Mr. Kennedy's attorney advised him that he was required to prepare a designated form in order to change his beneficiary.

Because no conflict exists between the documents, we need not reach the issue of Mr. Kennedy's reliance on the Summary Plan Description. We note, however, that even if we were called upon to decide which of the two documents controls, reliance would not be a factor. This is not the typical situation where an

14

employer and an employee are at odds over the employee's right to benefits; here, the administrator seeks guidance on interpreting the Plan to determine who the appropriate beneficiaries are among competing beneficiaries. Reliance is relevant only when an estoppel principle is present, such as when an employee asserts he or she is entitled to benefits under the language of a summary plan description and the employer contends that a plan document controls and precludes benefits. "[T]o prevent an employer from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary." Branch v. G. Bernd Co., 955 F.2d 1574, 1579 (11th Cir. 1992).

The district court did not err by concluding that the life insurance benefits are to be distributed under a beneficiary designation that is acceptable under the Plan document. There is no issue as to Mr. Kennedy's reliance on certain language in the Summary Plan Description, as there is no conflict between that passage and its analog in the Plan document.

## III.

The district court correctly interpreted the Liberty Mutual policy to allow Mr. Kennedy's will to serve as a beneficiary designation for the Georgia-Pacific executive life insurance policy. Mr. Kennedy set forth his intended beneficiaries in his signed will, and following his death, the will was filed with Georgia-Pacific. Accordingly, the will qualified as an acceptable alternative change notice. The

15

district court also correctly enforced the Plan by declaring Mr. Kennedy's will to be the controlling designation. The will was effective as of the date of its signing, and it was the latest designation Mr. Kennedy executed before his death.[5] "The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993); 29 U.S.C. § 1102(a)(1), (b)(4) (2000) (plan must be written and must specify the basis on which payments are made).

IV.

Barbara Kennedy argues that the district court erred in "drawing inferences" as to Mr. Kennedy's intent because intent is a factual question not appropriately decided on summary judgment. The record does not support her assertion. The legal questions decided by the district court were whether the Plan allowed for the will to serve as a valid beneficiary designation and, if so, whether the will was the last beneficiary designation Mr. Kennedy executed. The district court did not attempt to infer Mr. Kennedy's intent in answering either of these questions. The only reference to intent in the legal section of the district court's order came in a conclusory sentence: "Thus, I give full effect to the terms of the Will as it reflects Mr. Kennedy's consistent expression of his intent to leave his insurance benefits

---

[5]The Plan provides: "An employee may change the Beneficiary . . . [with] acceptable written notice . . . filed with [Georgia-Pacific]. The change . . . will take effect from the date the employee signed the notice."

to his wife, Mary Beth Kennedy, and each of his four children." The district court did not improperly rely on a finding of a disputed fact to reach a legal conclusion.

Finally, Mary Beth Kennedy urges alternative grounds to affirm. She argues that the Summary Plan Description is not valid and thus there can be no conflict between the documents, and she urges us to apply the federal common law doctrine of substantial compliance to give effect to the beneficiary designation in Mr. Kennedy's will. Our decision obviates the need to discuss these arguments.

The judgment is AFFIRMED.