**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LAWRENCE M. BECKER, as fiduciary of the Xerox Corporation Savings Plan and Xerox Corporation Retirement Income Guarantee Plan, *Plaintiff*, | No. 13-35069 D.C. No. 3:11-cv-05830-BHS |
| CARMEN STEPHANIE MAYS-WILLIAMS, *Defendant-Appellee*, | OPINION |
| v. | |
| ASA WILLIAMS, JR., as personal representative of the Estate of Asa Willie Williams, *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
May 15, 2014—Seattle, Washington

Filed January 28, 2015

Before: Diarmuid F. O'Scannlain, Marsha S. Berzon,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Employee Retirement Income Security Act

The panel reversed the district court's summary judgment in an ERISA interpleader action seeking a determination as to the proper beneficiary of proceeds under two employee benefit plans.

The plan participant formally designated his wife as his beneficiary. After their divorce, he designated his son as beneficiary over the telephone but did not sign and return beneficiary designation forms.

The panel held that the beneficiary designation forms were not "plan documents" governing the plan administrator's award of benefits under 29 U.S.C. § 1104(a)(1)(D). The panel concluded that there was a triable issue as to whether, under state law, the plan participant strictly or substantially complied with the governing plan documents' requirements for changing his beneficiary designation. The panel remanded the case for further proceedings.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Steven P. Krafchick, Krafchick Law Firm PLLC, Seattle, Wash., argued the cause and filed the briefs for the Defendant-Appellant. With him on the briefs was Lisa V. Benedetti, Krafchick Law Firm PLLC, Seattle, Wash.

Marcia P. Ellsworth, Peterson Russell Kelly, PLLC, Bellevue, Wash., argued the cause and filed a brief for the Defendant-Appellee. With her on the brief was Merryn B. DeBenedetti, Peterson Russell Kelly, PLLC, Bellevue, Wash.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a decedent succeeded in his attempt to ensure that his son—and not his ex-wife—received the benefits to which his employer's retirement plans entitled him.

I

A

When he retired in October 2004, Asa Williams, Sr., ("Asa, Senior") had worked for the Xerox Corporation for over thirty years. He participated in various benefit programs that Xerox maintained for its employees, including the Xerox Retirement Income Guarantee Plan (the "RIGP") and the Xerox Savings Plan (the "Savings Plan," and, together with the RIGP, collectively, the "Xerox Plans"), both of which are

subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Asa, Senior, married Carmen Mays-Williams ("Carmen") in January 1993. In 2002, he formally designated Carmen as his beneficiary under the Xerox Plans. Following his divorce from Carmen in 2006, he attempted to change his designated beneficiary under the Xerox Plans from his now ex-wife Carmen to his son from an earlier marriage, Asa Williams, Jr., ("Asa, Junior"). Specifically, in July 2007, Asa, Senior, "telephonically undesignated" Carmen as his beneficiary under the RIGP, and indicated that he wanted his son as beneficiary instead. Asa, Senior, gave similar telephonic instructions with respect to the RIGP in February 2008 and with respect to both Xerox Plans in January 2011. In each instance, following the telephone conversation with Xerox, Asa, Senior, received, but did not sign and return, beneficiary designation forms requesting that he confirm his selection of his son as beneficiary.

On May 16, 2011, Asa, Senior, died.

B

A month later, Carmen wrote to Xerox claiming to be her ex-husband's beneficiary under the Xerox Plans. Asa, Junior, likewise asserted a right to the plan proceeds. Rather than resolve the competing claims, the fiduciary of the Xerox Plans interpleaded the two parties in federal district court seeking its determination as to the proper beneficiary. Carmen moved for summary judgment, asserting that because Asa, Senior, failed to fill out and to return the beneficiary designation forms, he did not properly designate Asa, Junior, as beneficiary in her place.

The district court granted Carmen's motion for summary judgment, and declined, on the subsequent motion of Asa, Junior, to reconsider its judgment. Asa, Junior, filed a timely notice of appeal.

C

The Xerox Retirement Income Guarantee Plan Agreement (the "RIGP Agreement") provides the terms and procedures under which Xerox extends retirement benefits to qualified employees, including the procedure for designating a beneficiary. By its terms, unmarried participants "shall designate" a beneficiary, and "may change [the] designation of beneficiary from time to time." A married participant, in contrast, before "designat[ing] one other than his Spouse as beneficiary," must first obtain "the requisite spousal consent complying in every respect with regulations promulgated by the Secretary of the Treasury." The Agreement also bestows upon the plan administrator the discretion to "construe and interpret the provisions of the Plan, determine all questions of fact, and make rules and regulations under the Plan to the extent deemed advisable or helpful."

The Xerox Retirement Income Guarantee Plan Summary Plan Description (the "RIGP SPD," or "SPD") similarly notes that, while unmarried participants "can name anyone [they] want to be the beneficiary of any death benefit that may become payable," ERISA restricts married participants from freely designating beneficiaries. 29 U.S.C. § 1055(c)(2). Specifically, the SPD explains that if a married participant age 35 or older wishes to designate a beneficiary other than his wife, he must "submit [his] spouse's written and notarized consent to do so on forms available . . . ." The SPD does not outline any further requirements for designating a

beneficiary. Rather, it explains that a participant "may visit the Your Benefits Resources web site . . . or call the Xerox Benefits Center . . . to complete or change [his] beneficiary designation at any time." Elsewhere, the SPD explains that, upon the death of an unmarried participant, "a valid beneficiary designation must be on file with the Xerox Benefits Center prior to . . . death," or Xerox will disburse benefits to the participant's estate.

The Xerox Savings Plan Agreement (together with the RIGP Agreement, collectively, the "Plan Agreements") was not in the record before the district court at the time of Carmen's motion for summary judgment. Rather, Carmen attached five pages of "excerpts" from the Agreement as an exhibit to her response to a subsequent motion for reconsideration. These excerpts—which do not include a signature page, a date of adoption, or any authentication besides the affidavit of Carmen's attorney—outline a similar procedure for beneficiary designations to the one described in the RIGP Agreement. They also delegate to the plan administrator the authority "to prescribe such schedules or forms which he deems necessary or helpful to carry out the purposes of the Plan . . . ."

The Xerox Savings Plan Summary Plan Description (the "Savings Plan SPD," and, together with the RIGP SPD, collectively, the "SPDs") contains similar language to the RIGP SPD regarding beneficiary designations, except that the Savings Plan SPD omits any reference to any required "form," even when describing the restrictions on a married participant's freedom to designate beneficiaries.

II

An ERISA fiduciary must distribute benefits "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). In granting summary judgment in favor of Carmen, the district court determined that the beneficiary designation forms themselves constituted "plan documents" which Asa, Senior, needed to sign and to return in order to change his beneficiary designation. Asa, Junior, disputes this determination, and argues that the beneficiary forms do not constitute "plan documents."

A

In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009), the Supreme Court declined to decide whether the category of "documents and instruments governing the plan" described in § 1104(a)(1)(D) included beneficiary designation forms such as those at issue in this case. *Id.* at 304. Nor have we yet addressed the question.[1] Thus, whether such beneficiary forms constitute

---

[1] Only one court of appeals has confronted the issue. The Third Circuit, in a pre-*Kennedy* case, suggested that potentially all "documents on file with the Plan," including beneficiary designation forms, fit within the statutory definition. *See McGowan v. NJR Serv. Corp.*, 423 F.3d 241, 245–46 (3d Cir. 2005) (Van Antwerpen, J.), *abrogated on other grounds by Kennedy*, 555 U.S. 285. *But see id.* at 258 n.17 (Fuentes, J., dissenting) ("[Although] Judge Van Antwerpen's opinion reads this provision as allowing all documents *filed with* the Plan to govern its administration, including forms filed to designate beneficiaries[,] . . . I note in passing that the governing documents could reasonably be limited to those that set forth the terms of the plan.").

But *McGowan* provides little guidance for this case. In *McGowan*, the claimant sought to require the plan administrator to abide by the terms

"plan documents" presents this court with a question of first impression.

We draw guidance from our previous interpretation of a similar ERISA provision, 29 U.S.C. § 1024(b)(4). *See Hughes Salaried Retirees Action Comm. v. Adm'r of the Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995) (en banc). Under § 1024(b)(4), plan administrators are required, upon the request of a participant or beneficiary, to provide the requesting party with a copy of various plan documents, including SPDs, annual reports, terminal reports, bargaining agreements, trust agreements, contracts, and "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). In *Hughes Salaried Retirees Action Committee v. Administrator of the Hughes Non-Bargaining Retirement Plan*, we interpreted that category to include only "those documents that provide individual participants with information about the plan and benefits." *Id.* at 690. Citing legislative history, the en banc panel explained that § 1024(b)(4) includes only those documents that elucidate "exactly where [the participant] stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits . . . ." *Id.* (quoting S. Rep. No. 93–127, at 27 (1974))

of a marital settlement agreement instead of the beneficiary designation form. The lead opinion drew a contrast between those instruments duly filed with the plan, such as beneficiary designation forms, and extrinsic documents, such as "outside private agreements between beneficiaries and participants." *Id.* at 246 (Van Antwerpen, J.). Asa, Junior, in the present case, does not argue that extrinsic documents prevail over those filed with the plan. Rather, he contends that the provisions of the Plan Agreements should control over any purportedly additional requirements imposed by the beneficiary designation forms.

(internal quotation marks omitted). Notably, the en banc panel specifically rejected an interpretation of § 1024(b)(4) to include "all documents that are critical to the operation of the plan." *Id.* (internal quotation marks omitted). Rather, the en banc panel limited the "other instruments" category to those "similar in nature" to the documents specifically listed in § 1024(b)(4). *Id.* at 691.**[2]**

In *Kennedy*, the Supreme Court suggested that the "other instruments" category described in § 1024(b)(4) overlaps with the "documents and instruments governing the plan" category in § 1104(a)(1)(D). 555 U.S. at 304. Indeed, the category described in § 1104(a)(1)(D) may be even *narrower* than that described in § 1024(b)(4).**[3]** Thus, only those that provide information as to "where [the participant] stands with respect to the plan," such as an SPD or trust agreement might, could qualify as governing documents with which a plan administrator must comply in awarding benefits under § 1104(a)(1)(D). Because the beneficiary designation forms

---

**[2]** Other circuits have similarly construed § 1024(b)(4) as encompassing only formal documents that govern the operation of the plan. *See, e.g.*, *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 797–98 (7th Cir. 2009) (collecting cases from across the circuits consistent with the view that "instruments" in § 1024(b)(4) "reaches only formal legal documents governing a plan" (internal quotation marks omitted)); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 654 (4th Cir. 1996) ("The clear and unambiguous meaning of this statutory language encompasses only formal or legal documents under which a plan is set up or managed.").

**[3]** The Supreme Court has specifically excluded the statutorily mandated summary plan description, listed in § 1024(b)(4), as a source of the plan's governing terms. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011) ("[T]he summary documents, important as they are, provide communication with beneficiaries *about* the plan, but . . . their statements do not themselves constitute the *terms*.").

in this case provide no such information—rather, they simply confirm the participant's attempt to change his designated beneficiary—the forms are not "plan documents" governing the administrator's award of plan benefits.

B

Nor do any of the actual plan documents incorporate the beneficiary designation forms so as to bring them into the § 1104(a)(1)(D) category of governing documents. The RIGP Agreement defines the "Plan" as the provisions "set forth [t]herein or in any amendment [t]hereto." While the Agreement expressly contemplates the incorporation of certain other documents, such as trust agreements, to be "deemed to form a part of the Plan," nowhere does the Agreement allude to beneficiary designation forms, and none of the schedules annexed to the Agreement contain even the vaguest reference to a beneficiary designation form. Moreover, while the RIGP SPD refers to the use of forms for *married* participants to change their beneficiary designations, nowhere does the RIGP SPD refer to the use of any form for *unmarried* participants. Finally, the Xerox representative, whose declaration Carmen attached to her motion for summary judgment, did not list among the "plan documents" those beneficiary designation forms that appear in the record.[4]

In sum, nothing in the record indicates that the beneficiary designation forms themselves constituted, or were in any way

---

[4] Even if the panel were to review the excerpts from the Savings Plan Agreement submitted by Carmen in response to Asa, Junior's motion to reconsider, the excerpts do not allude to the mandatory use of specific forms, and therefore fail to demonstrate the incorporation of the beneficiary forms into the governing plan documents.

incorporated into, governing plan documents. Therefore, the district court erred in determining that Asa, Senior, was required to abide by the language contained in the forms—but not in the governing plan documents—to change his beneficiary designation from Carmen to Asa, Junior.

III

Carmen counters that even if the beneficiary forms were not "plan documents," Asa, Senior, still needed to comply with them because Xerox exercised its authority to require their use.

Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), if a plan grants the administrator discretion to interpret it or to determine benefit eligibility, a court will uphold such interpretation or determination if reasonable. *Id.* at 115. Here, the RIGP Agreement bestows upon Xerox the discretion to "construe and interpret the provisions of the Plan, determine all questions of fact, and make rules and regulations under the Plan to the extent deemed advisable or helpful." Assuming without deciding that such language bestows discretion on the plan administrator, we must determine whether the administrator actually exercised such discretion by sending the beneficiary designation forms to Asa, Senior.[5]

Carmen argues that the forms themselves are evidence of Xerox's exercise of discretion to require Asa, Senior, to complete and to return the beneficiary designation forms in order to effect the change. The forms indicate that "to

---

[5] We also assume that the Savings Plan Agreement would require similar judicial deference to administrative determinations thereunder.

finalize" and "to validate" the beneficiary designations, the participant must "[s]ign, date, and return" them. The forms also state that they "confirm[] your beneficiary designations that you made" and refer to the date of Asa, Senior's phone call.

Asa, Junior, on the other hand, contends that the record fails to establish that the plan administrators were vested with discretion to require their use. Notably, while the forms conspicuously display the Xerox logo and indicate the benefits plan to which they pertain, they also include the insignia and other information of Hewitt Associates LLC, which the Xerox Plans hired as an agent, but apparently did not nominate as a plan administrator or other fiduciary. Furthermore, nothing in the record indicates that the plan administrator required any other plan participants to sign and to return such beneficiary forms in order to change beneficiary designations.

Moreover, rather than award benefits to Carmen due to Asa, Senior's alleged failure to return the signed beneficiary forms, the plan administrator declined to award benefits to either party, and instead chose to file this present interpleader action. Thus, the plan administrator impliedly *declined* to exercise any discretion in determining whether Asa, Senior's telephonic designation of Asa, Junior, as beneficiary was valid under the plan. *See, e.g.*, *Liberty Life Assurance Co. of Boston v. Kennedy*, 358 F.3d 1295, 1299 (11th Cir. 2004) (finding that a plan administrator did not exercise discretion granted to it under the plan when the administrator filed an interpleader action to determine whether a beneficiary designation form filed in accordance with plan documents or a subsequently executed will governed benefit eligibility).

Thus, as there has been no exercise of discretion to which we could defer, we review de novo whether Carmen or Asa, Junior, is entitled to plan benefits—a question answered by reference to the governing plan documents. *See Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 993 (9th Cir. 2000); *see also Liberty Life*, 358 F.3d at 1299 (applying de novo review when the plan administrator declined to exercise its discretionary authority to interpret benefit eligibility).

IV

The inquiry thus is whether Asa, Senior, strictly or substantially complied with the governing plan documents. *See BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 830 (9th Cir. 2000). Such an inquiry is one of state law, *see id.*, and one that implicates Asa, Senior's intentions, *see, e.g.*, *Sun Life Assurance Co. of Canada v. Sutter*, 95 P.2d 1014, 1016 (Wash. 1939) ("[I]n cases in which the insurer is not interested, the intent of the insured is entitled to great consideration."); *see also Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993) ("Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." (internal quotation marks omitted)).

Nothing in the governing plan documents prevents unmarried participants from designating beneficiaries by telephone call. The RIGP Agreement provides that unmarried participants "may change [the] designation of beneficiary from time to time." In clarifying the requirements of the underlying Plan Agreements, both SPDs instruct unmarried participants to call the Xerox Benefits Center or to visit the Xerox website in order to change or to

complete a beneficiary designation. And while the plan documents require written designations for *married* participants, they decline to impose any sort of writing requirement on *unmarried* participants. Thus, the governing plan documents permit unmarried participants to change their beneficiary designations by telephone.

In light of the evidence before us, including Xerox's call log from January 10, 2011, reflecting that Asa, Senior, called Xerox to change his beneficiary designation from Carmen to Asa, Junior, a reasonable trier of fact could determine that Asa, Senior, intended to change his beneficiary to Asa, Junior, and that his phone calls to Xerox constituted substantial compliance with the governing plan documents' requirements for changing his beneficiary designation.

Accordingly, we cannot sustain the grant of summary judgment in favor of Carmen.

V

We therefore **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.