[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12342

_____

D.C. Docket No. 1:18-cv-04083-ODE

WANDA CROWDER,

Plaintiff-Appellant,

versus

DELTA AIR LINES, INC., et al.,

Defendants,

THE DELTA AIR LINES, INC. FAMILY-CARE SAVINGS PLAN,
THE ADMINISTRATIVE COMMITTEE OF DELTA AIR LINES, INC.,
FIDELITY WORKPLACE SERVICES, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 26, 2020)

Before JORDAN, TJOFLAT and HULL, Circuit Judges.

HULL, Circuit Judge:

Plaintiff-appellant Wanda Crowder's ex-husband, Marvin Crowder, was a Delta Air Lines, Inc. employee who participated in his employer's retirement plan, the Delta Family-Care Savings Plan ("the Plan"). Before he died, Wanda and Marvin Crowder divorced. After Mr. Crowder's death, the Plan's Recordkeeper, Fidelity Workplace Services, LLC ("Fidelity"), disbursed his plan benefits to his sister, Chappie Prince, as his designated beneficiary. Wanda Crowder appealed Fidelity's decision denying her own claim for benefits. The Plan Administrator determined that after their divorce, Wanda Crowder had no entitlement to her ex-husband's benefits under the Plan's terms.

Wanda Crowder filed this action against the Plan, the Plan Administrator, and Fidelity, alleging claims of wrongful denial of benefits and breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The district court granted the defendants' motion to dismiss, concluding, under de novo review, that the Plan Administrator's benefits determination was not wrong. On appeal, Crowder argues the defendants misinterpreted the Plan's terms and breached their fiduciary duties. After careful review and with the benefit of oral argument, we conclude that the Plan Administrator correctly interpreted the Plan and that, after her divorce, Wanda

2

Crowder had no entitlement to her ex-husband's benefits under the Plan's terms. Thus, we affirm the dismissal of Wanda Crowder's ERISA claims.

## I. BACKGROUND

For over thirty years, Mr. Crowder worked for Delta. As a Delta employee, Marvin Crowder participated in Delta's retirement plan, and died in 2016. We first review the pertinent terms of the Plan.

### A. Delta's Defined Contribution Retirement Plan

Delta's Plan is a qualified, defined contribution plan governed by ERISA and the Internal Revenue Code. See 26 U.S.C. § 401; 29 U.S.C. § 1002(34). The Plan Administrator is the Administrative Committee of Delta Air Lines, Inc. ("the Committee"). In Section 12.05, the Plan gives the Committee: (1) the discretionary authority to interpret and construe the terms of the Plan, and to determine "eligibility of any Employee or Beneficiary" to receive benefits in accordance with the Plan's provisions, and (2) authorizes the Committee to determine the amount of and pay benefits to "any Participant, retired Participant, or Beneficiary in accordance with the provisions of the Plan," and to determine the person or persons to whom such benefits shall be paid.

Under Section 8.02(a) of the Plan, distribution of the vested value of a Plan Participant's account "shall be made or shall commence to the Participant (or to his

Beneficiary, in the case of his death), as soon as practicable after the Participant's Event Date" (here, Marvin Crowder's date of death).

A "Beneficiary" under the Plan is "the person or persons described in Section 14.03 of the Plan who are to receive upon the Participant's death a Plan benefit, if any, as may be provided under Article 8 (Distribution) . . . of the Plan." The heart of this dispute involves the interpretation of Section 14.03, which further defines who is a "Beneficiary." Section 14.03 provides that "[t]he term Beneficiary as used in the Plan means a person or persons last so designated by a Participant on a form submitted to the Plan Recordkeeper and satisfactory to the Administrative Committee in its sole discretion."

However, if "no such designation is made, or if no person so designated survives the Participant, or if . . . the whereabouts of a person is unknown and no death benefit claim is submitted," then the Beneficiary becomes "the personal representative of such Participant, if any has qualified within fifteen (15) months from the date of his death or, if no personal representative has so qualified, any heirs at law of the Participant whose whereabouts are known by the Administrative Committee."

Section 14.03, however, contains a marriage exception. It provides that the Participant's Spouse "automatically" becomes the Beneficiary "during such marriage," as follows:

4

> [I]f the Participant is Married, then during such marriage the Participant's Spouse shall automatically be the Beneficiary unless the Participant waives the spousal designation and indicates another person or persons as Beneficiary on a form satisfactory to the Administrative Committee in its sole discretion and the Spouse gives written consent to such waiver and the naming of such person as Beneficiary on such form (such consent to be given in conformance with regulations issued by the Internal Revenue Service). Beneficiary designations must be received by the Plan prior to the death of a Participant. No other Beneficiary designation other than as provided herein shall be valid.

The term "Spouse" in Section 14.03 is defined in Section 1.54 of the Plan as "the person to whom the Participant is Married." The term "Married" in Section 14.03 is defined in Section 1.34 of the Plan as "having entered into a marriage that is lawful under state law, including marriage between individuals of the same sex."

The Summary Plan Description ("SDP") explains that, if a Plan Participant dies before the entire account balance is distributed to him, the account balance is paid to the Participant's Beneficiary. The SDP instructs the Participant to designate a Beneficiary by "complet[ing] a Beneficiary designation form." The SDP advises that the Beneficiary designation "will become effective on the date that Fidelity receives [the Participant's] properly completed and signed form" and that the designation "must be on file with the Plan on the date of [his] death for the designation to be effective."

The SPD warns that "[i]t's important to keep your Beneficiary information current. Events such as marriage, divorce, birth, adoption or death of a family member may create a need to change your Beneficiary designation." Further, if the

5

Participant dies "without having properly designated a Beneficiary(ies), . . . payment of [the Participant's] account will be made to [his] estate." We now outline the relevant facts.

**B. Benefits Distribution to Ms. Prince as the Designated Beneficiary**

In 2004, Marvin married Wanda. During the marriage, Marvin never affirmatively designated Wanda to be a beneficiary. However, under Section 14.03, Wanda Crowder "automatically" became the beneficiary during their marriage.

In 2011, the Crowders separated, and, on June 23, 2014, Wanda Crowder filed a complaint for divorce. On July 14, 2014, Marvin Crowder submitted to the Delta Employee Service Center a family status change form dated July 8, 2014. On the form, Marvin advised that he and Wanda Crowder were divorced on June 23, 2014. In fact, the Crowders' divorce was not yet final.

Two days later, on July 16, 2014, Marvin Crowder submitted an electronic beneficiary designation form to Fidelity designating his sister, Chappie Prince, as his sole Beneficiary. On August 11, 2014, a state court judge signed the final divorce decree, making the Crowders' divorce final.

On January 23, 2016, Marvin Crowder died. On January 27, 2016, his sister, Ms. Prince, reported his death to Delta, and Fidelity distributed his plan account to Ms. Prince, as the "beneficiary it had on file" on February 26, 2016.

**C.     Wanda Crowder's Administrative Appeal**

On December 13, 2016, Wanda Crowder sent a letter to Fidelity stating that she was Marvin Crowder's "ex-wife" and "designated beneficiary" under the Plan at the time of his death and was "entitled to a full distribution of his benefits." On April 25, 2017, Fidelity responded that plan benefits were paid out to the Beneficiary on file and enclosed a copy of Marvin Crowder's July 2014 beneficiary form designating Ms. Prince as his sole Beneficiary.

On August 17, 2017, Wanda Crowder appealed Fidelity's decision. The Administrative Subcommittee of the Plan denied her appeal based on its determination that she "was not Marvin Crowder's beneficiary at the time of his death." The Subcommittee explained that, under the terms of the plan, "the Beneficiary is automatically the participant's spouse" but only "<u>during the time they are married</u>," and it was undisputed that the Crowders "had been divorced for 16 months at the time of his death."

Upon further appeal, the Committee, like the Subcommittee before it, determined that Wanda Crowder was not Marvin Crowder's Beneficiary under the terms of the Plan, in particular Section 14.03, governing who is a "Beneficiary," and Sections 1.34 and 1.54, defining the terms "Married" and "Spouse."

The Committee acknowledged that the Crowders were still married when Marvin Crowder submitted the form designating Ms. Prince as his Beneficiary.

The Committee concluded, however, that, "irrespective of the purported invalidity" of the July 16, 2014 designation, "based on the Plan's terms and Mr. Crowder's marital status at the time of his death, . . . [Wanda Crowder] was not entitled to received Mr. Crowder's Plan account."

**D.     Wanda Crowder's Amended Complaint**

Wanda Crowder brought this action in the district court alleging the following ERISA claims:[1] (1) wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) against the Plan and the Committee (Count I); (2) breach of fiduciary duty under § 1132(a)(3) against Fidelity in making the decision to pay, and paying, benefits to Ms. Prince (Count II); and (3) breach of fiduciary duty under § 1132(a)(3) against the Plan and the Committee by "misrepresenting facts and concealing records from [her] during her administrative appeals" and by "failing to adequately select, train, and monitor Plan service providers, including Fidelity," as to the Plan's automatic spousal designation and requirements to change designated Beneficiaries (Count III).

---

[1]Wanda Crowder's original complaint asserted additional claims against Delta Air Lines, the Administrative Subcommittee, and Vesta Crowder, who was Marvin Crowder's mother and the personal representative of his estate. After the defendants filed motions to dismiss the original complaint, Wanda Crowder voluntarily dismissed her claims against these defendants without prejudice. Wanda Crowder then filed an amended complaint that did not include claims against the dismissed defendants. When we refer to Crowder's complaint, we mean her amended complaint unless otherwise noted.

8

With respect to Count I, Wanda Crowder requested "a lump sum payment" of Marvin Crowder's vested benefits and "prejudgment and postjudgment interest." As for Counts II and III, Wanda Crowder sought various forms of equitable relief. Crowder also asked for attorney's fees and cost.

## E. Defendants' Motion to Dismiss

The defendants moved to dismiss Crowder's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the defendants' motion to dismiss as to all three counts. The district court reviewed the denial of plan benefits to Wanda Crowder pursuant to the six-step framework in Blankenship v. Metropolitan Life Insurance Co., 644 F.3d 1350, 1354 (11th Cir. 2011). The district court concluded at the first step that, taking Crowder's alleged facts as true, in light of the Plan language submitted as part of the amended complaint, the Committee's decision on Crowder's claim for benefits was "not wrong" and that Crowder's claims for breach of fiduciary duty thus fail, too.

## II. STANDARD OF REVIEW

We review de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Lanfear v. Home Depot, Inc., 679 F.3d 1267, 1275 (11th Cir. 2012). To survive a motion to dismiss, the complaint's "'allegations must be

9

enough to raise a right to relief above the speculative level,'" and "must plead 'a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 1965, 1974 (2007)).

Exhibits attached to the complaint are treated as part of the complaint for Rule 12(b)(6) purposes.  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215-16 (11th Cir. 2012); see also Thaeter v. Palm Beach Cty. Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006).  Similarly, documents attached to a motion to dismiss may be considered by the district court without converting the motion into one for summary judgment if they are central to the plaintiff's claim and their authenticity is not challenged.  Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  Neither party has raised an objection to our consideration of the documents submitted by the parties.[2]

### III.  DISCUSSION

**A.      Benefits Claim**

ERISA § 1132 permits a beneficiary of a plan to bring a civil action "to recover benefits due to him under the terms of [the] plan."  29 U.S.C. § 1132(a)(1)(B).  A beneficiary under ERISA is "a person designated by a

---

[2]The parties largely agree on the facts.  Notably, some of the facts recited in both parties' briefs are drawn from documents attached to Crowder's original complaint but not to her amended complaint.  Neither party has raised any objection to consideration of these documents.  Therefore, our recitation of the facts also relied upon these documents.

participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Id. § 1002(8).

"The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself." Liberty Life Assurance Co. of Boston v. Kennedy, 358 F.3d 1295, 1302 (11th Cir. 2004) (quotation marks omitted). "Borrowing from state contracts law," federal courts have "further developed rules of contract interpretation in construing ERISA plans," including that "[w]e first look to the plain and ordinary meaning of the policy terms to interpret the contract." Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan, 833 F.3d 1299, 1307 (11th Cir. 2016). If we "conclude a term is ambiguous," meaning it is "susceptible to two or more reasonable interpretations that can be fairly made," then we apply "the rule of contra proferentem," which requires us to construe the ambiguity against the plan drafter. Id.

Additionally, because "ERISA itself provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries," this Court, drawing from Supreme Court precedent, has established a "multi-step framework" to guide district courts. Blankenship v. Metro. Life Ins. Co., 644 F.3d at 1354. The first step in the framework is: "Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry

11

and affirm the decision." Id. at 1355.  In reviewing a benefits determination, the district court is "limited to consideration of the material available to the administrator at the time it made its decision." Id. at 1354.[3]  This Court "review[s] de novo the district court's ruling affirming or reversing a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision." Id.

## B.    Analysis of Benefits Claim

Here, the district court's review began and ended at this first step with the conclusion that the Committee's benefits decision was "not wrong."  In undertaking our own de novo review, we agree with the district court that the Committee correctly denied Wanda Crowder benefits because she was not a "Beneficiary" under the Plan at the time of her ex-husband's death.

As the district court determined, Section 14.03 of the Plan governs whether Wanda Crowder was Marvin Crowder's "Beneficiary" when he died.  See Liberty Life Assurance Co., 358 F.3d at 1302.  Under the first sentence of Section 14.03, the "Beneficiary" is the "person or persons last so designated by a Participant on a form submitted to the Plan Recordkeeper and satisfactory to the Administrative Committee in its sole discretion."  The parties agree that Marvin Crowder never

---

[3]Crowder does not contend that the district court rendered its decision on an incomplete record.  See Williamson v. Travelport, LP, 953 F.3d 1278, 1289-90 (11th Cir. 2020) (discussing the complete administrative record).  In any event, the district court accepted, and we accept, Crowder's alleged facts as true for purposes of reviewing the defendants' motion to dismiss.

affirmatively designated Wanda Crowder as his Beneficiary by submitting the proper form to Fidelity, the Plan's recordkeeper, as required in the first sentence of Section 14.03.[4] Thus, the only way Wanda Crowder is entitled to Marvin Crowder's plan benefits is if she was the automatic spousal beneficiary under Section 14.03 when Marvin Crowder died.

The problem for Wanda Crowder is Section 14.03 indicates that the automatic spousal designation applies only "if the Participant is Married" and only "during such marriage." In other words, Wanda Crowder was the automatic spousal beneficiary only as long as she remained married to Marvin Crowder. Once the divorce was finalized, her status as the automatic spousal beneficiary ceased. Accordingly, at the time of Marvin Crowder's death, almost 18 months

---

[4]This fact distinguishes Crowder from the ex-wife in Kennedy v. Plan Administrator for DuPont Savings and Investment Plan, 555 U.S. 285, 129 S. Ct. 865 (2009). In Kennedy, the Supreme Court ruled that the plan administrator had properly disregarded the ex-wife's waiver of her right to plan benefits in a divorce decree that was not a qualified domestic relations order ("QDRO") and properly paid her benefits precisely because the deceased participant had affirmatively designated her as his beneficiary according to the plan's terms. Id. at 288-90, 299-304, 129 S. Ct. at 868-69, 875-78. Kennedy stands for the proposition that, absent a QDRO to the contrary, a participant's affirmative designation of a spouse as a beneficiary survives divorce, but it says nothing about whether an automatic designation of a spouse arising under the plan's terms would do so. The cases Crowder cites for the proposition that "a divorce does not automatically revoke a designation of beneficiary" involved participants who had affirmatively designated their ex-wives as their beneficiaries before the divorce and did not change that designation after the divorce. See, e.g., Egelhoff v. Egelhoff, 532 U.S. 141, 121 S. Ct. 1322 (2001); Ark. Chapter, NECA-IBEW Ret. Fund v. Chronister, 337 F. Supp. 2d 1144 (E.D. Ark. 2004); Mounce v. Mounce, 921 F. Supp. 712 (N.D. Okla. 1996). These cases, like Kennedy, do not address the circumstances or plan terms presented here and therefore provide little in the way of guidance.

after the divorce decree was signed, Wanda Crowder was not a Beneficiary under Section 14.03 and was not entitled to her ex-husband's plan benefits.[5]

Crowder argues that the phrase "during the marriage" in Section 14.03 refers only to the participant's ability to change the automatic spousal designation and not to the duration of the automatic spousal designation.  Crowder contends that this interpretation is required by Section 14.03's express reference to "regulations issued by the Internal Revenue Service."  Crowder says this reference expressly incorporated Treasury Regulation 26 C.F.R. § 1.401(a)-20, Q&A-25(b)(3).  Crowder agrees this particular regulation, which has to do with survivor annuities for former spouses, is not applicable to Delta's Plan under ERISA, but she claims it must be enforced in this case under the "plan documents rule."  See 29 U.S.C. § 1102(a)(1) (requiring employee benefit plans to "be established and maintained pursuant to a written instrument"); id. § 1104(a)(1)(D) (requiring fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan").

---

[5]Another way Wanda Crowder could have been entitled to plan benefits was if her divorce decree was a QDRO that gave her, as an alternate payee, rights to receive all or a portion of Marvin Crowder's plan benefits or directed that she, as the "former spouse . . . be treated as a surviving spouse of" Marvin Crowder.  See 26 U.S.C. § 414(p)(1)(A); 29 U.S.C. § 1056(d)(3)(B)(i), (d)(3)(F)(i); see also 29 C.F.R. § 2530.206(c)(2).

However, Wanda Crowder's complaint affirmatively alleged that her divorce decree was not a QDRO.  Thus, while other sections of Delta's Plan address QDROs, we need not discuss them.  Nothing herein should be construed as ruling on a QDRO.

Crowder's construction conveniently ignores that Section 14.03 merely requires that a Spouse's written consent to the Participant's waiver of the automatic spousal beneficiary designation be "in conformance with" IRS regulations. Section 14.03 does not require any other terms, apart from the written consent requirement, to be interpreted according to Treasury Department regulations. Therefore, Section 14.03 does not incorporate wholesale the regulatory requirements for survivor annuities for spouses and former spouses, much less Treasury Regulation § 1.401(a)-20, Q&A-25(b)(3) in particular, which has nothing to do with spousal consent. There is no merit to Crowder's contention that Q&A-25(b)(3) required the Committee to interpret "during the marriage" in the way she suggests.

As the defendants aptly point out, Crowder's interpretation of Section 14.03—that once married, the automatic spousal designation survives divorce and lasts until the Participant's death unless the Participant affirmatively designates a Beneficiary after the divorce—requires some language in § 14.03's marriage exception to be changed and other language to be added. For Crowder's understanding of the marriage exception to be correct, it would have to state: "Provided, however, if the Participant has ever been Married, then during and after such marriage, the Participant's Spouse shall automatically be the Beneficiary." It would also require the Plan's definition of the term Spouse in Section 1.54 to be

changed to "the person to whom the Participant is or has been Married," so that it also includes former spouses. Crowder's interpretation of Section 14.03 not only requires reading words into the provision, but also raises additional unanswered questions, such as whether the Participant must also obtain his former spouse's written consent to affirmatively change the Beneficiary to someone else and what happens if the Participant marries again.

Contrary to Crowder's argument, the phrase "during the marriage" in Section 14.03's marriage exception does indeed refer to the duration of the automatic spousal designation. The phrase is found in the portion of the marriage exception conferring automatic beneficiary status on the Spouse, and not in the subsequent portion, starting with "unless," that addresses the Participant's ability to change the automatic spousal designation to someone else. Moreover, as commonly understood, the word "during" means "throughout the continuance or course of." During, Merriam-Webster Unabridged Online Dictionary, https://unabridged.merriam-webster.com/unabridged/during (last visited May 11, 2020); see Alexandra H., 833 F.3d at 1307 (explaining that ERISA plan terms are generally given their "plain and ordinary meaning"). By the Plan's plain terms, a Spouse's status as an automatic spousal beneficiary under Section 14.03 lasts only

16

"throughout the continuance or course of" the marriage to the Participant and thus necessarily ceases when that marriage ends in divorce.[6]

Crowder's contention that this interpretation of § 14.03 conflicts with the SPD lacks merit. The language in the SPD Crowder focuses upon consists merely of cautionary statements to Plan Participants to keep their beneficiary information up to date and that Participants may want to change their beneficiary designations upon certain life events, such as births, marriages, divorces, and deaths.[7] Nothing in the SPD suggests Wanda Crowder's <u>automatic</u> spousal beneficiary status would continue after the divorce became final unless and until Marvin Crowder submitted a new change of beneficiary form.

Crowder devotes a significant portion of her argument to whether Marvin Crowder's July 16, 2014 designation of his sister, Ms. Prince, was valid. We need not decide the validity of Ms. Prince's beneficiary status because, regardless of how it is resolved, Wanda Crowder is still not a Beneficiary under the Plan and is not entitled to benefits. Even assuming <u>arguendo</u> that Marvin Crowder's affirmative designation of Ms. Prince was premature and invalid when it was made

---

[6]Because the terms of Section 14.03 are clear rather than ambiguous, there is no merit to Crowder's argument that we must construe that provision against the drafter and in her favor.

[7]Marvin Crowder appears to have taken this advice in the SPD to heart, as he completed his new beneficiary form designating his sister as his Beneficiary within weeks of Wanda Crowder's filing for divorce and two days after submitting a family change status form notifying Delta (incorrectly as it turned out) that he was divorced.

17

before the final divorce decree and remained so after the final divorce decree up to the time of his death, that would not entitle Wanda Crowder to plan benefits. Under Section 14.03 of the Plan, if, at the time of the Participant's death, "no [affirmative] designation is made" and the Participant is not married, then the Beneficiary is the Participant's "personal representative" or "any heirs at law." There is no dispute that Wanda Crowder was not Marvin Crowder's personal representative or his heir at law.[8] Thus, Wanda has no basis under § 1132(a)(1)(B) to challenge the payment of plan benefits to Ms. Prince as the last affirmatively designated Beneficiary on file with Fidelity.

In sum, Wanda Crowder failed to state a plausible claim for wrongly denied benefits under § 1132(a)(1)(B) because, accepting the allegations in her complaint as true, she was neither Marvin Crowder's affirmatively designated Beneficiary nor married to Marvin Crowder at the time of his death. Thus, Wanda Crowder was not a "Beneficiary" under Section 14.03 of the Plan as a matter of law.

## C. Breach of Fiduciary Duty Claims

Counts II and III of Crowder's complaint alleged that the defendants breached fiduciary duties to act prudently and in accordance with Plan documents

---

[8]Indeed, Wanda Crowder originally sued Vesta Crowder, the personal representative of Marvin Crowder's estate, but then voluntarily dismissed her from this action.

We need not determine if Marvin Crowder's designation of Ms. Prince as the Beneficiary became effective after the divorce decree because all we narrowly need to decide is whether the Committee's denial of Wanda Crowder's claim was wrong, and it was not wrong.

18

and instruments, see 29 U.S.C. § 1104(a)(1)(B), (D), and sought relief under 29 U.S.C. § 1132(a)(3).

ERISA obligates a fiduciary to "discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1) (emphasis added). Those duties include acting "with the care, skill, prudence, and diligence" of a prudent man and "in accordance with the documents and instruments governing the plan." Id. § 1104(a)(1)(B), (D).

Here, as we have already discussed, the Committee correctly concluded that Wanda Crowder was not a "Beneficiary" under the Plan. ERISA's fiduciary duties, however, run to a plan's "participants" and "beneficiaries." See id. § 1104(a)(1). Therefore, even assuming arguendo that all of the defendants were fiduciaries, they owed no ERISA-imposed duties to Wanda Crowder when they paid Marvin Crowder's benefits to Ms. Prince.

Notably, ERISA similarly limits the right to seek equitable relief under § 1132(a)(3) for a fiduciary's breach of his duties to plan "participant[s]," "beneficiar[ies]," and other "fiduciar[ies]," of which Wanda Crowder was not one. Therefore, Crowder arguably also lacked statutory authorization to bring a claim for equitable relief based on the defendants' alleged breach of their fiduciary duties. See Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1240-41 (11th Cir. 2001) ("The only parties that have standing to sue under ERISA are

19

those listed in the civil enforcement provision of ERISA, codified at 29 U.S.C. § 1132(a).").  In any event, because Crowder was not a Beneficiary to whom the defendants owed any ERISA-imposed duty during the events in question, the district court correctly concluded that Crowder's claims in Counts II and III also must fail.[9]

## IV.  CONCLUSION

For the forgoing reasons, we affirm the district court's dismissal of Wanda Crowder's claims against the defendants under § 1132(a)(1)(B) and § 1132(a)(3).

**AFFIRMED.**

---

[9]Because we conclude the defendants owed Wanda Crowder no fiduciary duty under ERISA, we do not address the defendants' argument that Crowder's § 1132(a)(3) claims for equitable relief in Counts II and III were barred by Katz v. Comprehensive Plan of Group Insurance, 197 F.3d 1084 (11th Cir. 1999), because those claims rested on essentially the same allegations as her § 1132(a)(1)(B) claim to recover benefits in Count I.