[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10449

_____

D.C. Docket No. 1:17-cv-00406-WSD

ANGELA HENDERSON WILLIAMSON,
on behalf of herself and all others similarly situated,

Plaintiff - Appellant,

versus

TRAVELPORT, LP,
GALILEO & WORLDSPAN U.S. LEGACY PENSION PLAN,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 27, 2020)

Before JORDAN, GRANT, and SILER,* Circuit Judges.

JORDAN, Circuit Judge:

Angela Henderson Williamson worked at United Airlines and two of its successors for nearly 30 years. During her employment, she participated in the Galileo & Worldspan U.S. Legacy Pension Plan, which currently governs her pension benefits, and two of its predecessor plans. As her retirement date approached, she contacted Travelport, the plan administrator, and the parties began a five-year informal dispute about her pension benefits calculation. The dispute involved numerous communications and document requests. At one point, Travelport corrected a mistake regarding its average salary computation, but only after Ms. Williamson was able to locate and send her old W-2 forms to Travelport. Though the parties were able to resolve that issue informally, they continued to disagree about two other aspects of Ms. Williamson's pension. Ms. Williamson eventually filed a formal claim for benefits, which Travelport denied.

Ms. Williamson then brought a class action against Travelport and the Galileo & Worldspan U.S. Legacy Pension Plan in federal court under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* She asserted claims for improperly withheld pension benefits, document-disclosure penalties, and

---

* Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

breach of fiduciary duties.  The district court dismissed all of the claims under Rule 12(b)(6).  Following oral argument, and for the reasons which follow, we affirm except as to Ms. Williamson's claim for benefits.  With respect to that claim, we reverse and remand for the district court to review her claim anew after Travelport has certified and submitted the complete and accurate administrative record.

**I**[1]

Ms. Williamson began working as a flight attendant (a position then called a stewardess) for United Airlines in September of 1968.  She was employed there until June of 1988, when she was transferred to Covia Corporation.  She worked at Covia through December of 1992, after which she was transferred to Apollo Travel Services Partners, a successor of Covia.  She worked at Apollo until May of 1997.

During her approximately 28 years of employment at UAL, Covia, and Apollo, Ms. Williamson participated in three pension plans: the UAL Non-Union Ground Employees' Retirement Plan, the Covia Pension Plan, and the Galileo International Employee Pension Plan, which later became the Galileo & Worldspan U.S. Legacy Pension Plan.  The Legacy Plan is currently the operative plan

---

[1] Because we hear this appeal following a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted, we accept as true the facts as alleged in Ms. Williamson's complaint and attached documents, and draw all reasonable inferences in her favor.  *See, e.g., Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).  If allegations in the complaint conflict with an attached document that Ms. Williamson adopts, the document controls.  *See Saunders v. Duke*, 766 F.3d 1262, 1270–71 (11th Cir. 2014); *Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008).  For these reasons, we take our factual recitation from Ms. Williamson's complaint and attached documents.

governing her pension benefits, while the UAL and Covia plans are its predecessors. Travelport took over sponsorship and administration of the Legacy Plan in 2008.

The Legacy Plan is a non-integrated, defined benefits pension plan and is a "pension plan" within the meaning of ERISA.  *See* 29 U.S.C. § 1002(2)(A).  It provides monthly retirement benefits to participants based on their final average compensation and months of service.  *See* D.E. 4-1 at § 6.02 ("Participant's Monthly Normal Benefit shall be determined as follows: 1.6% of his Final Average Compensation MULTIPLIED BY: Months of Benefit Service / [DIVIDED BY] 12.").  The Legacy Plan defines the final average compensation as the highest monthly average of a participant's compensation over 60 consecutive months during the last 120 months of service with the employer.  *See id.* at § 2.27.  Months of service are credits for each month of employment—including employment under predecessor plans—that add to the participant's pension.  *See id.* at § 2.11(b).

## A

In 2011, as her retirement date approached, Ms. Williamson contacted Travelport about making a claim under the Legacy Plan in which she was fully vested.  After discussions with Travelport between 2011 and early 2012, Ms. Williamson believed that Travelport was calculating her benefits incorrectly.

Ms. Williamson first disputed Travelport's calculation of her final average compensation.  To that end, she made several oral and written document requests,

which we discuss in more detail below.  Travelport provided Ms. Williamson with certain documents but did not send her the employment or salary records that she believed would help her determine her final average compensation.  Instead, on Travelport's advice, Ms. Williamson located her old W-2 forms and sent them to Travelport.  Based on these W-2 forms, Travelport determined that it had incorrectly calculated Ms. Williamson's final average compensation and increased her final average compensation from $77,973.57 to $82,111.

Having resolved the final average compensation dispute, Ms. Williamson sent a letter to Travelport on May 20, 2015, requesting distribution of the undisputed portion of her benefits.  Ms. Williamson began receiving those benefits the following month, but she continued to dispute two components of Travelport's calculation of her months of service.

First, Ms. Williamson claimed that Travelport improperly reduced the months of service she should have accrued for her work at UAL.  She asserted that Travelport relied on a provision in the UAL Plan that excluded credits for the first 12 months of employment between the ages of 21 and 25, even though a conflicting provision in the summary plan description (SPD for short) of the Legacy Plan provided that participants received credit for *every* month of employment between the ages of 21 and 25.  *See* D.E. 4-6 at 39.  Under ERISA, an SPD is a summary of the plan that "shall be written in a manner calculated to be understood by the average

5

plan participant[ ] and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). ERISA requires that the SPD include certain information, such as the name and address of the plan agents and/or administrators, summaries of the provisions respecting eligibility and benefits, and the source of financing of the plan. *See* § 1022(b).

Second, Ms. Williamson claimed that she was not credited for the months she worked at Covia, even though she participated in the Covia Plan during her tenure there and should have received those credits under the Legacy Plan. In its denial letter, appended to Ms. Williamson's complaint, Travelport explained that it had offset her Covia months-of-service credits against an annuity purchased by the UAL Plan and later transferred to the Covia Plan, and that this offset was permissible under the Legacy Plan.

The parties were not able to resolve these two months-of-service disagreements through informal discussions, so on August 8, 2015, Ms. Williamson filed a formal claim. Travelport denied Ms. Williamson's claim on December 7, 2015. She appealed the decision to Travelport's benefits committee, which denied her claim again on August 2, 2016.

6

**B**

During the five-year dispute that spanned from 2011 to 2016, Ms. Williamson made several oral and written requests to Travelport for plan-related documents. Because those requests and Travelport's responses are pertinent to Ms. Williamson's claim for document-disclosure penalties under § 1132(c), we list them here in detail.

- In 1999, Ms. Williamson inquired about early retirement. On October 15, 1999, Galileo (then her plan sponsor) sent her an administrative worksheet describing the benefits she would receive if she retired early and if she retired at her normal retirement age.

- On February 10, 2012, in an oral conversation with a Travelport representative, Ms. Williamson requested five categories of documents: (1) plan documents containing the formulas from the 1999 early retirement letter; (2) historical documents relating to the Legacy Plan and any changes made to the plans or their formulas over the years; (3) corporate history documents; (4) benefits calculation documents; and (5) her own attendance records.

- On February 17, 2012, Travelport provided three documents to Ms. Williamson via e-mail: (1) the current Legacy Plan; (2) the then-current Legacy Plan SPD; and (3) a draft SPD for the 1993 predecessor Galileo Plan.

- After an oral conversation on April 12, 2012, a Travelport representative sent Ms. Williamson an e-mail on April 18, 2012, with another copy of the administrative worksheet originally attached to the 1999 early retirement letter, and with the actual calculation of Ms. Williamson's benefits.

- On August 21, 2012, Ms. Williamson sent an e-mail to Travelport requesting that it send, within one week, "ALL of the materials that I have previously requested," including "every document, plus sworn statements from witnesses with personal knowledge explaining or supplying facts as to which testimony would be necessary, which

7

[Travelport] would present in court to prove conclusively the amount" of her pension. *See* D.E. 4-13.

- On August 27, 2012, Travelport sent a letter that included (1) Ms. Williamson's "Pensionable Earnings History" data, (2) Ms. Williamson's "Total Benefit Service" data, and (3) a copy of a letter that UAL had sent to Ms. Williamson in 1990 regarding the amount of pension benefits she accrued during her UAL tenure. Travelport stated that it would not provide Ms. Williamson with her work and salary records, or the "archaeological record of the various transitions and iterations of the plans that precede the one we have already provided." D.E. 4-14; D.E. 16 at ¶ 44.

- On August 28, 2012, Travelport sent Ms. Williamson a Pension Modeling Statement.

- On October 9, 2012, Ms. Williamson sent Travelport a written request for documents that she needed to verify the calculation of the final average compensation component of her benefits. *See* D.E. 4-16 (requesting "[e]arnings or . . . [c]ompensation figures," including various computations and "underlying" data). Travelport did not provide Ms. Williamson with employment or source documents detailing her earnings history.

- On May 20, 2014, Ms. Williamson requested by e-mail "the actual records from which Travelport extracted the false numbers it used to calculate my 'benefits.'" D.E. 4-20 at 4.

- On July 9, 2014, Ms. Williamson sent a letter to Travelport requesting that, if it disagreed with her calculation of the months of service, it supply her with "all documents and records that you claim support any such dispute and that you reference specifically and all language in the Plan that you contend supports any such dispute." D.E. 16 at ¶¶ 77-80; D.E. 4-22 at 5.

- On October 1, 2014, Travelport sent a letter together with three printouts calculating her plan benefits. In the letter, Travelport referred to provisions of the 1988 Covia Plan, which Travelport had not yet sent to Ms. Williamson.

8

- On March 4, 2015, Travelport sent Ms. Williamson (1) one of the Covia plans, (2) the UAL Plan, (3) the 1993 Galileo Plan, (4) the 1997 Galileo Plan, (5) the 1993 Galileo SPD, and (6) a copy of the 2008 Legacy Plan.

- On August 8, 2015, Ms. Williamson requested "claims file documents" in the event that Travelport denied her claim for additional benefits based on the months-of-service dispute. Travelport denied her claim but did not send any additional documents.

- In an April 5, 2016 letter, Ms. Williamson again requested employment and claim-specific documents—e.g., "the underlying source document, records and other information relevant to verifying, by specific month, year, and reason" for Travelport's calculation of her benefits, and "ANY records or source material or documents to verify [her] correct amount of Months of Benefits Service." D.E. 4-36 at 8.

## C

As noted, Ms. Williamson brought a class action against Travelport and the Legacy Plan in February of 2017. She later filed an amended complaint.

Ms. Williamson sought, on behalf of herself and all others similarly situated, the following relief: (1) a declaratory judgment under § 1132(a)(1)(B) that their pension benefits were calculated incorrectly; (2) damages under § 1132(a)(1)(B) for pension benefits wrongly withheld based on the allegedly improper calculations; (3) a finding that the defendants breached their fiduciary duties under ERISA; and (4) attorney's fees and prejudgment interest under § 1132(g). She also sought, under § 1132(c) and on her behalf only, penalties for the defendants' alleged failure to give her documents that ERISA requires administrators to provide within 30 days upon written request.

9

Ms. Williamson appended 38 documents to her amended complaint. These included several of the letters and e-mails between herself and Travelport, the plan-related documents that Travelport provided in response to her oral and written requests, and Travelport's letters denying her claim and administrative appeal.

The defendants moved to dismiss the amended complaint as an improper shotgun pleading in violation of Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure. They also moved to dismiss Ms. Williamson's claims on the merits under Rule 12(b)(6). The district court granted the defendants' motion to dismiss in full.

First, the district court ruled that Ms. Williamson failed to allege that she had requested, and that defendants had not timely provided, the specific types of documents enumerated in § 1024(b)(4). The district court also rejected Ms. Williamson's claim of entitlement to document penalties based on disclosure duties arising under § 1059(a) or otherwise outside of ERISA, such as under Department of Labor regulations.

Second, the district court dismissed Ms. Williamson's claim for declaratory judgment and damages based on the allegedly inaccurate calculation of her benefits. Relying on the amended complaint and the attached exhibits, the district court conducted the six-part Eleventh Circuit test for judicial review of a plan administrator's benefits determination. *See Blankenship v. Metro. Life Ins. Co.*, 644

F.3d 1350, 1354 (11th Cir. 2011). The district court concluded that Travelport's decision regarding Ms. Williamson's benefits was not *de novo* "wrong" and therefore ended its inquiry as required by *Blankenship*.

Third, the district court dismissed Ms. Williamson's claim for breach of fiduciary duty under § 1132(a)(3). It concluded that Ms. Williamson had "available" (albeit unsuccessful) benefits claims under § 1132(a)(1)(B), and as a result those available claims precluded her claim for breach of fiduciary duty.

Having rejected all of Ms. Williamson's other claims, the district court dismissed the claim for attorney's fees. Finally, as an alternative basis for dismissal, the district court determined that Ms. Williamson's amended complaint was an impermissible "shotgun pleading" because it was nearly impossible to determine which facts supported which claims.

## II

We review *de novo* the dismissal of a complaint for failure to state a claim upon which relief can be granted, accepting all factual allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. *See Starship Enters. of Atlanta, Inc. v. Coweta Cty.*, 708 F.3d 1243, 1252 (11th Cir. 2013). To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

11

## III

ERISA allows a participant to bring a civil action in federal court to recover benefits due or to clarify rights to benefits under the terms of a pension plan. *See* § 1132(a)(1)(B). Although ERISA does not specify the standard of judicial review of a plan administrator's benefits decisions, the Supreme Court has articulated a *de novo* standard unless the plan grants the administrator discretionary authority to determine benefits, in which case the court reviews the administrator's decisions with deference and only for abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The Eleventh Circuit has refined this framework into a six-part test. At the first step, the district court applies *de novo* review and determines whether the administrator's decision is wrong. If it is not wrong, the district court ends the inquiry and affirms the administrator's decision without addressing any discretion given to the administrator. *See Blankenship*, 644 F.3d at 1354.

## A

Ms. Williamson argues that the district court improperly ruled on the merits of her § 1132(a)(1)(B) claim in granting the defendants' 12(b)(6) motion to dismiss because it did not have the full administrative record upon which Travelport relied and because the parties had only briefed matters pertinent to the motion to dismiss, and not the ultimate factual merits of her claims. We agree.

12

The first step of the *Blankenship* test requires *de novo* review of an administrator's benefits decision, which in turn involves consideration of the full administrative record that was before the administrator when it rendered its decision. Although we are not aware of any cases in this circuit establishing a per se rule, several of our decisions assume the existence of a full administrative record. *See Blankenship*, 644 F.3d at 1354 ("Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision."); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) ("The court must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator."); *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1312 (11th Cir. 2016) ("It is well established that in reviewing a denial of ERISA benefits, the relevant evidence is limited to the record before the administrator at the time the decision was made."). *See also Rasmussen v. Metro. Life Ins. Co.*, 675 F. Supp. 1497, 1507 (W.D. La. 1987) (explaining that review of a benefits decision "contemplates the existence of an administrative record formed after a full and fair review by the appropriate named fiduciary during which the fiduciary considered the Plan beneficiaries' arguments").

The Fifth Circuit has explicitly stated that a plan administrator "has the obligation to identify the evidence in the administrative record" and that a claimant

13

must have "a reasonable opportunity to contest whether that record is complete." *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 215 F.3d 516, 521 (5th Cir. 2000). *See also Balderrama v. Life Ins. Co. of N. Am.*, No. CIV 99-1167 LCS-ACE, 2000 WL 36739548, at *1 (D.N.M. Nov. 16, 2000) (ERISA claims were ripe for *de novo* review once the administrator filed the administrative record and the plaintiff had an opportunity to object to it). Likewise, the applicable federal regulations put the onus on the administrator to compile an administrative record that a claimant can review upon the denial of her claim. *See* 29 C.F.R. §§ 2560.503–1(f)–(h), (j).

Our decision in *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663 (11th Cir. 2014), is also instructive. There, a plan administrator denied the plaintiff's claim under a disability plan governed by ERISA. After the denial, the plaintiff sought Social Security Disability Income benefits from the Social Security Administration, which she was required to do under her disability plan. The SSA conducted medical evaluations and ultimately granted the plaintiff's claim for SSDI benefits. Though those examinations were available to the plan administrator during the claimant's internal appeal, the administrator did not consider them in affirming its denial. The plaintiff then sued in federal court under § 1132(a)(1)(B) and sought to expand the administrative record to include the medical evaluations. The district court denied that request and granted summary judgment affirming the administrator's decision.

14

We vacated and remanded, instructing the district court to remand to the plan administrator because it had rendered its decision on an incomplete record without the SSA medical evaluations. We explained that, as "a matter of common sense," we could not evaluate the plan administrator's decision to deny the benefits claim "without first considering whether the record [the administrator] had before it was complete." *Id.* at 673. We noted that a complete record was "a predicate to our ability to review the substantive decision we have been asked to review." *Id.* Just as a plan administrator must have a complete record before rendering its decision, so too must a district court have a complete record before conducting its *de novo* review under the first step in the *Blankenship* analysis.

Travelport argues that *de novo* review could nonetheless be performed here because Ms. Williamson's complaint "*effectively* placed before the [district court] the pertinent portions of the administrative record." *See* Appellee's Br. at 41 (emphasis added). But Ms. Williamson did not and does not stipulate to the record's completeness. To the contrary, she explicitly alleged that Travelport withheld documents from her and asserted claims under ERISA's document-disclosure provision. The documents that she has and was able to append to her complaint therefore may not constitute the full administrative record.

Moreover, a plan administrator does not get to determine which portions of the record the district court may see in conducting a *de novo* review. As we stated

15

in *Melech*, the complete record is a "predicate" to our substantive review of a claim. 739 F.3d at 673. Obtaining a complete and accurate record is best accomplished not by relying on counsel's interpretation of which documents are relevant, but with a certified record or affidavit from the administrator that the complete and accurate record has been compiled and presented. *See Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 201 (5th Cir. 1997) ("[I]t is the plan administrator's responsibility to compile a record that he is satisfied is sufficient for his decision. . . [A]s a practical matter, the plan administrator is ordinarily best-positioned to submit that administrative record."). *See also Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457–58 (6th Cir. 2003) (a court can consider the administrative record identified by an affidavit from an individual, so long as the individual has personal knowledge of the contents of that record).[2]

At a later stage of the case, Travelport of course may argue that certain documents are more relevant than others, or not relevant at all. But it cannot artificially limit the administrative record at the outset based on its own assessment of relevance. Once Travelport properly certifies the record, or the parties stipulate

---

[2] *Cf.* Leland E. Beck, *Agency Practice and Judicial Review of Administrative Records in Informal Rulemaking*, Report for the Admin. Conf. of the U.S. at pp.60, 78 (May 14, 2013) (explaining that in the administrative law context, agency officials submit affidavits to guarantee "completeness and correctness" of the administrative record); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2723 (4th ed., August 2019 update) ("When a summary-judgment motion relies on . . . administrative records, those records either must be certified or properly subject to the judicial-notice doctrine.").

16

to a complete record, then the district court can entertain dispositive motions and review Travelport's decision *de novo* under the first *Blankenship* step.[3]

## B

Our holding that the district court improperly ruled on the merits of Ms. Williamson's claims without a full administrative record does not preclude the possibility that a § 1132(a)(1)(B) claim can be dismissed on a Rule 12(b)(6) motion. For example, there may be cases in which it is clear from the face of a complaint that the plaintiff failed to plead any facts that—if accepted as true—would permit relief under § 1132(a)(1)(B). Or the parties may simply dispute the meaning of a term in a plan, and stipulate that the court can render a decision based on a few appended documents. In such circumstances, the court may be able to rule on a 12(b)(6) motion to dismiss without requiring certification of the entire administrative record.

The district court here applied the *de novo* standard of review on the merits but suggested that dismissal under Rule 12(b)(6) was appropriate because the complaint was deficient. For example, the district court noted that Ms. Williamson's pleadings were "legally and factually deficient" and failed to allege specifically how

---

[3] We express no view at this time as to whether Ms. Williamson might be entitled to discovery if she believes that the administrative record submitted by Travelport on remand is incomplete. *See Bratton*, 215 F.3d at 521 (explaining that a claimant must have an opportunity to contest the completeness of an administrative record).

Travelport's denial was unreasonable, an abuse of discretion, or *de novo* wrong. Thus, the district court seemed to indicate that, even accepting her well-pled allegations as true and considering the appended documents, Ms. Williamson would inevitably fail the *Blankenship* test, either at the *de novo* review step or at the later abuse-of-discretion step. We disagree, and hold that Ms. Williamson stated plausible claims for benefits under ERISA.

## 1

Ms. Williamson first alleged that Travelport improperly excluded months-of-service credits from her Covia tenure in calculating her total benefits. She appended to her complaint Travelport's denial letter, which explained that those credits were offset by an annuity purchased under the UAL Plan and transferred to the Covia Plan. The district court ruled that Ms. Williamson failed to state a claim because she did not offer a different interpretation than that in the plan and the denial letter, and therefore it was unable to conclude that the plan was "unfairly or improperly applied." D.E. 24 at 30.

But whether the annuity was "properly applied"—i.e., properly calculated or offset against Ms. Williamson's months-of-service credits—appears to be a factual question that cannot be answered without the full administrative record. That record may include documents regarding the annuity, its value, and how that value was measured against the value of her months of service. Only with those documents

can the court determine whether the annuity was properly applied and offset against Ms. Williamson's months-of-service credits.  Notably, Travelport did not argue in the district court and has not argued on appeal that the appended documents foreclosed the possibility that the annuity was improperly offset.  It only argued that Ms. Williamson failed to show how Travelport abused its discretion in interpreting the plan, and that it had otherwise offered a sufficient explanation in its denial letter.  But the district court never reached the abuse-of-discretion step in *Blankenship*, so that deferential standard does not save the day here.

We take both the district court's and Travelport's point that Travelport will ultimately be entitled to deferential, abuse-of-discretion review—Ms. Williamson does not deny that Travelport is given discretion to interpret the Legacy Plan and does not allege any conflict of interest—and that Ms. Williamson did not explain exactly how Travelport abused its discretion.  As one court has explained in a similar case, however, "[t]here is a degree of analytical tension between the deference to plan interpretation required by *Firestone* and the mandate that all facts as pled by [the claimant] are to be taken as true" for purposes of a Rule 12(b)(6) motion to dismiss.  *See Harrison v. PNC Fin. Servs. Grp.*, 928 F. Supp. 2d 934, 944 (S.D. Ohio 2013).  This tension is "exacerbated" where there is an "incomplete administrative record before the [c]ourt."  *Id.*  We do not fault Ms. Williamson's failure to allege specifically how Travelport abused its discretion because she explicitly claimed that

19

she has not received all the necessary documents. Only Travelport knows the documents and evidence that it relied on in making its determination about the application of the annuity, and ERISA seeks to avoid such an informational imbalance.

Again, we note that this is a somewhat unique case. There are three interrelated pension plans, various restatements and amendments to those plans over several years, and several concomitant plan documents, SPDs, and claimant-specific source documents. Travelport, moreover, admitted to miscalculating one component of Ms. Williamson's pension benefits. The large volume of plan documents and the multiple changes to the interrelated plans make it more plausible that Travelport miscalculated this component of Ms. Williamson's benefits, and Travelport's past mistake lends even further credibility to this allegation. These facts, construed in a light favorable to Ms. Williamson, help us draw the reasonable inference that— applying *de novo* review—she has sufficiently pled a claim under § 1132(a)(1)(B) for an improperly offset annuity. *See Twombly*, 550 U.S. at 570.

**2**

Ms. Williamson also alleged that Travelport incorrectly excluded 12 months of credit from her UAL employment based on an apparent conflict between the Legacy Plan and the 2009 SPD for the Legacy Plan. She claims that while the Legacy Plan does not allow for plan participation until a person attains the age of 21

20

*and* works for one full year, *see* D.E. 4-1 at § 3.01, the 2009 SPD would have credited every month that she worked at UAL between the ages of 21 and 25, *see* D.E. 4-6 at 39, and therefore concludes that the SPD should control her benefits calculation.

The district court explained that when there is a conflict between a plan and an SPD, the plan governs unless the plaintiff proves reliance on the SPD provision. The court ruled that because Ms. Williamson did not allege any facts demonstrating reliance on the 2009 SPD (or that she even read the SPD), her claim necessarily failed.

Although this is a closer call than the annuity claim, we hesitate to affirm dismissal at the motion-to-dismiss stage given that Travelport will be required to provide and certify a full administrative record. The record may refute Ms. Williamson's allegation, but it is also plausible that Ms. Williamson relied on other documents which she does not currently have access to. For example, at oral argument, counsel for Ms. Williamson explained that Travelport had not yet provided her *any* of the SPDs for the UAL plan. *See* Oral Argument Recording at 2:11–3:33.

Ms. Williamson began her employment in 1968 governed by the UAL Plan, and the UAL Plan (like the Legacy Plan) requires that a participant attain 21 years of age and complete one year of service prior to eligibility. *See* D.E. 4-1 at § 3.01.

21

But it is plausible that the UAL SPD at that time included the same conflicting language that now appears in the 2009 SPD—that participants receive credit for "*each* month of employment with [UAL] that [they] completed between ages 21 and 25." D.E. 4-6 at 39 (emphasis added). This is even more plausible because another SPD, the 1993 Galileo SPD, included that same language. *See* D.E. 4-5 at 10.

It is also plausible that Ms. Williamson would have relied on a UAL SPD with that language in 1968 when she first began work. She may have relied on it in accepting employment at UAL, opting to participate in the UAL Plan, opting to participate in successor plans, declining to participate in other plans, and so forth. We recognize that Ms. Williamson has not pled specific facts supporting those theories, and ordinarily a plaintiff must prove reliance on an SPD for the SPD to govern over the terms of a plan. *See Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir. 1992) (holding that the plan's terms, and not those of the SPD, governed the plaintiff's eligibility for benefits because the plaintiff had provided "no evidence" that he "ever read or relied on the summary."); *Collins v. Am. Cast Iron Pipe Co.*, 105 F.3d 1368, 1371 (11th Cir. 1997) (holding that the plaintiff did not rely on a faulty SPD description because he admitted to not reading it until after he filed his lawsuit). But here Ms. Williamson alleges that she has not received all the relevant documents, and we do not think ERISA contemplates faulting Ms. Williamson when the documents upon which she may have relied upon 50 years ago

22

may be in the administrative record but are allegedly being withheld from her. ERISA's statutory disclosure requirements are intended to "help ensure that participants have access to information about their pension plans." *Minadeo v. ICI Paints*, 398 F.3d 751, 758 (6th Cir. 2005). And they are meant "to equip beneficiaries with the necessary information to enforce their rights, particularly in securing benefits to which they may be entitled." *Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 698 (9th Cir. 1995) (en banc) (Pregerson, J., dissenting).

This does not mean that benefits claimants do not need to satisfy the *Twombly* pleading requirements and state a claim that is plausible on its face. But we reiterate that the unusual facts of this case and the incomplete administrative record inform our plausibility analysis. Ms. Williamson participated in three different plans over several decades, which were amended and modified several times, and which came with two SPDs that have language favoring her characterization of her benefits entitlement. It is plausible that other SPDs included the same language and that she relied on those SPDs, and that a certified administrative record could help resolve the dispute. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) ("Having informed the city of the factual basis for their complaint, [the plaintiffs] were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.").

23

## IV

ERISA requires an administrator to provide, upon written request, "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). District courts have discretion to award statutory penalties to a participant if a plan administrator either refuses or fails to comply with a written request for information required "under this subchapter" within 30 days. *See* § 1132(c)(1).

## A

We have had few opportunities to consider what type of document requests trigger ERISA's penalty provision, or to expound on the scope of the administrator's disclosure requirements under §§ 1132(c)(1) and § 1024(b)(4). We begin by noting that, because § 1132(c) imposes penalties, it must be strictly and narrowly construed. *See, e.g., Bergamatto v. Bd. of Trustees of the NYSA- ILA Pension Fund*, 933 F.3d 257, 268 (3d Cir. 2019) (explaining that § 1132(c) is a penal provision and, as such, should be "leniently and narrowly construed"); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990) (same). Penalties therefore cannot be imposed for failure to provide documents other than those specifically enumerated in § 1024(b)(4). *See Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v.*

24

*Weinstein*, 107 F.3d 139, 143–147 (2d Cir. 1997) (explaining that "Congress intentionally fashioned [§ 1024(b)(4)] to limit the categories of documents that administrators[ ] must disclose on demand of plan participants," and that the statutory requirements are not "all-encompassing").

As to a participant's request for documents, we agree with our sister circuits which have held that a participant's request must provide the administrator with "clear notice" of what is requested under § 1024(b)(4), with the caveat that the participant is not required to name the precise document. *See Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 135 (2d Cir. 2001); *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 146 (3d Cir. 2007); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 655 (4th Cir. 1996); *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1077 (5th Cir. 1990); *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 707 (6th Cir. 2014); *Anderson v. Flexel, Inc.*, 47 F.3d 243 (7th Cir. 1995); *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994).

Whether a request provides appropriately clear notice is fact- and context-specific, based on what a company "knew or should have known" based on the request. *See Kollman*, 487 F.3d at 145. For example, the Third Circuit has explained that it does not suffice for a plan participant to request "all documents of any nature which relate, reflect or refer" to a benefits decision, because such a generalized request would not reasonably be interpreted to include the formal documents

25

enumerated under § 1024(b)(4). *See id.* at 146. *Cf. Faircloth*, 91 F.3d at 655 (holding that a request for "'any' meeting minutes 'regarding' [the employee stock ownership plan] in the last three years" was insufficient because it was "akin to asking [the administrator] to comb the past three years of trustees' meeting minutes to determine if they contained any information that could possibly be encompassed by [§ 1024(b)(4)]").

Notwithstanding this limitation to enumerated documents, the residual phrase in § 1024(b)(4)—"other instruments under which the plan is established or operated"—appears susceptible to a more expansive interpretation, particularly because ERISA does not elsewhere define the term "other instruments." But most circuits interpret "other instruments" narrowly, explaining that they must be "formal legal documents" and not merely any documents *related to* a plan. *See Weinstein*, 107 F.3d at 142; *Faircloth*, 91 F.3d at 654; *Ames v. Am. Nat. Can Co.*, 170 F.3d 751, 759 (7th Cir. 1999); *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 861 (8th Cir. 1999); *Hughes*, 72 F.3d at 690. We adopted this view in *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1275 n.8 (11th Cir. 2005), where we relied on *Faircloth* to hold that insurance policy projections were not "other instruments" under § 1024(b)(4) because they were not "formal or legal documents under which a plan is set up or managed."

26

**B**

With these principles in mind, we turn to Ms. Williamson's claims for document-disclosure penalties. Ms. Williamson argues that Travelport is subject to penalties based on six written requests. *See* D.E. 16 at ¶¶ 145, 148 (referring to written requests appended as D.E. 4-13, 4-16, 4-18, 4-20, 4-22, and 4-34–36).

The first written request to Travelport was an August 21, 2012 e-mail. In this e-mail Ms. Williamson demanded "ALL of the materials that I have previously requested" including "every document, plus sworn statements from witnesses with personal knowledge explaining or supplying facts as to which testimony would be necessary, which [Travelport] would present in court to prove conclusively the amount" of Ms. Williamsons' pension. *See* D.E. 4-13.

To the extent that this e-mail requested documents specific to Ms. Williamson's claim—documents and statements that Travelport "would present in court to prove" the amount of her benefits—these types of documents are not enumerated in § 1024(b)(4). Nor do the documents fit under § 1024(b)(4)'s residual clause—"other instruments under which the plan is established or operated"—because they are not formal legal instruments governing the plan. They therefore do not trigger the penalty provision. *See Weinstein*, 107 F.3d at 143 (holding that § 1024(b)(4) encompasses legal instruments but not all "technical data" potentially useful to a claimant); *Kollman*, 487 F.3d at 146 (explaining that a participant's

27

written request for all claim-specific documents did not put the administrator on clear notice to disclose documents actually enumerated in § 1024(b)(4)).[4]

As further evidence that § 1024(b)(4) does not include employee-specific or claim-specific documents, ERISA elsewhere ensures that employees can access documents specific to their employment and pensions. For example, § 1059(a) requires employers, in accordance with Department of Labor regulations, to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees," and requires plan administrators to "make a report," as required by Department of Labor regulations, to employees who request the report. We address below why Ms. Williamson is not entitled to document-disclosure penalties based on Travelport's alleged violations of federal regulations.

Returning to the e-mail dated August 21, 2012, that request also asked for "all" other materials that Ms. Williamson had "previously requested." As noted above, a generalized request such as this does not provide the administrator with clear notice to disclose documents enumerated in § 1024(b)(4). *See Kollman*, 487 F.3d at 146 (holding that a request for "all documents of any nature which relate,

---

[4] That these claim-specific documents may ultimately be part of the full administrative record does not mean they are covered by the statutory penalty provision. *See Ames*, 170 F.3d at 759 (explaining that administrators may be required to produce certain documents during litigation that would not otherwise subject them to statutory penalties under §§ 1132(c) and 1024(b)(4)).

28

reflect or refer" to a benefits decision was insufficient to trigger the penalty provision).

In some cases, a general written request may suffice to put the administrator on clear notice based on the facts and circumstances of the case. *See id.* But according to the complaint, Ms. Williamson's only previous request was an oral request on April 12, 2012. Even assuming that this prior request would have put Travelport on clear notice to produce certain § 1024(b)(4) documents (notwithstanding the six-month delay and the fact that she couched her general request in claim-specific language), Travelport satisfied its obligation by sending her the then-current SPD and the governing plan seven days after the oral request.

We also conclude that Ms. Williamson's remaining requests did not trigger §§ 1132(c) and 1024(b)(4). And even if they had, Travelport provided the requisite documents according to the complaint.

On October 9, 2012 Ms. Williamson sent an e-mail requesting "[e]arnings" and "[c]ompensation figures," including various computations and "underlying" data specific to her claim. *See* D.E. 4-16 at 4–5. On May 20, 2014, she requested by e-mail "the actual records from which Travelport extracted the false numbers it used to calculate my 'benefits.'" D.E. 4-20 at 4. On July 9, 2014, she requested "all documents and records that you claim support any such dispute and that you reference specifically and all language in the Plan that you contend supports any

29

such dispute." D.E. 16 at ¶¶ 77-80; D.E. 4-22 at 5. In an April 6, 2016 letter, she requested, in various iterations, her employment and claim-specific documents—e.g., "the underlying source document, records and other information relevant to verifying, by specific month, year, and reason" for Travelport's calculation of her benefits, and "ANY records or source material or documents to verify [her] correct amount of Months of Benefits Service." D.E. 4-36 at 8. For the reasons stated above, these claim-specific and employment history document requests do not trigger the penalty provisions in § 1132(c).

Regarding Ms. Williamson's request for "all language in the Plan that [Travelport] contend[s] supports" its position on her claim, this would at most have put Travelport on notice to provide the governing pension plan or, arguably, the then-current SPD. According to the complaint, Travelport admittedly provided Ms. Williamson with the current Legacy Plan and the current SPD, as well as the administrative worksheet upon which it relied in making its determination. *See* D.E. 16 at ¶¶ 34, 36; D.E. 4-10. Travelport therefore satisfied all of its disclosure obligations, and the district court correctly dismissed Ms. Williamson's claims for penalties under § 1132(c).

## C

We now turn to Ms. Williamson's argument that Travelport should be liable under § 1132(c) for violations of § 1059(a) and Department of Labor regulations.

Fatal to this argument is that § 1132(c) penalizes violations "under this subchapter," and not violations of federal regulations. *See Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 111 (3d Cir. 1986) (holding that the term "this subchapter" in § 1132(c) "refers only to violations of statutorily imposed obligations, and . . . does not embrace violations of regulations promulgated pursuant to the statute").

Furthermore, § 1059(a) does not create a private right of action, but instead subjects employers and administrators to regulatory fines. *See* § 1059(b) ("If any person who is required . . . to furnish information or maintain records for any plan year fails to comply with such requirement, he shall pay to the Secretary a civil penalty of $10 for each employee with respect to whom such failure occurs."). *See also Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 565–66 (S.D.N.Y. 2012) ("Courts have interpreted this language to mean that [§ 1059] does not create a private right of action but instead affords the remedy of a civil penalty to be paid to the Secretary of Labor.") (collecting cases). Indeed, we are not aware of any cases holding that a plan administrator can be liable under § 1132(c) for violations of § 1059(a).[5]

---

[5] Some courts have held that that if a plaintiff has proven that an employer is liable for delinquent contributions to a trust fund and has failed to keep adequate records under § 1059(a), the burden shifts to the employer to produce evidence that the plaintiff's calculation of damages was not accurate. *See Combs v. King*, 764 F.2d 818, 827 (11th Cir. 1985). *See also Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696 (6th Cir. 1994); *Brick Masons*

Even assuming that § 1059(a) could serve as a basis for penalties under § 1132(c), there are other problems with Ms. Williamson's argument. Under § 1059(a), *employers* are required to maintain the type of employment documents Ms. Williamson seeks, and then "[t]he employer shall furnish to the plan administrator the information necessary for the administrator to make the reports required by the preceding sentence." *See also James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 710 F. Supp. 2d 16, 29–30 (D.D.C. 2010) (holding that a plan and plan administrator were not liable under § 1059(a) for refusing to provide employment records, as it was the employer's responsibility to maintain records under the provision). Like the plaintiffs in *James*, Ms. Williamson alleges that Travelport, the plan administrator, and not any of her former employers, "failed to maintain the records necessary to determine employee benefits." D.E. 16 at ¶ 149.

## V

Ms. Williamson alleges that Travelport breached its fiduciary duty by (1) failing to warn her that it was not maintaining documents, (2) failing to maintain documents "relevant to the calculation of benefits for [her]," and (3) failing to provide documents in accordance with the language of the Legacy Plan that provides that a participant, after a claim denial, can request and receive "reasonable access to,

---

*Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338–39 (9th Cir. 1988). This proposition is not helpful to Ms. Williamson.

and copies of, all documents and other information relevant to the claim." Accordingly, she seeks "appropriate equitable relief" under § 1132(a)(3).

As relevant here, § 1132(a)(3) permits participants to bring civil actions "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Supreme Court has described this provision as a "safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The relevant question is "whether the plaintiffs also had a cause of action, based on the same allegations, under [§ 1132(a)(1)(B)] or ERISA's other more specific remedial provisions." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1073 (11th Cir. 2004). "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would not be appropriate." *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003) (quoting *Varity*, 516 U.S. at 515).

Ms. Williamson does not specify the "appropriate equitable relief" that she seeks. Assuming she is seeking a recalculation of her benefits, she has an available remedy under § 1132(a)(1)(B), and therefore cannot assert a claim under § 1132(a)(3).

33

Ms. Williamson argues, however, that her claims for breach of fiduciary based on improper record-keeping and deficient disclosure are cognizable under § 1132(a)(3) because they involve different allegations than her benefits claim under § 1132(a)(1)(B).  Although this appears true at first glance, courts addressing ERISA record-keeping claims brought under § 1132(a)(3) "have deemed such claims to be disguised claims for benefits properly brought under [§ 1132(a)(1)(B)] rather than claims for equitable relief which may permissibly be brought under [§ 1132(a)(3)]." *Winfield*, 842 F. Supp. 2d at 566 (collecting cases).

In *Winfield*, for example, the plaintiffs sought "equitable relief" requiring the administrator to provide them extra credits toward their benefits calculation, but "[t]he logical result of such crediting . . . would be a recalculation of the plaintiffs' benefits, which, in turn, would result in monetary relief."  *Id.*  Thus, the plaintiffs' claim was "intertwined" with benefits they sought under the plan and should have been brought under § 1132(a)(1)(B).  *See id.*  We acknowledge that in *Winfield*, the plaintiffs specifically alleged that they were seeking a recalculation of benefits, whereas Ms. Williamson does not specify the relief she seeks.  But it appears that Ms. Williamson is seeking a recalculation of her benefits, for part of her fiduciary duty claim is based on documents "relevant to the calculation of benefits."  Her equitable relief claim therefore is "intertwined with," if not entirely duplicative of, her benefits claims under § 1132(a)(1)(B).

34

If, on the other hand, Ms. Williamson is seeking compensatory damages for the alleged breach of a fiduciary duty, such a legal remedy is not available under § 1132(a)(3). *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (explaining that § 1132(a)(3) encompasses "those categories of relief that were *typically* available in equity," such as "injunction, mandamus, and restitution") (emphasis in original). Although the Supreme Court has indicated that § 1132(a)(3) relief may include an equitable lien against "specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (e.g., identifiable property like a car)," *Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658 (2016), Ms. Williamson does not identify specific property or funds to which she is entitled an equitable lien.

Assuming Ms. Williamson is not seeking a recalculation of her benefits or compensatory damages, but instead is seeking injunctive relief to compel Travelport to warn her about its record-keeping practice, to maintain certain underlying source documents, or to produce certain documents, then she lacks standing to do so. She does not allege any facts that show she faces prospective and imminent injuries from Travelport's alleged failure to warn, maintain, or provide her underlying employment records, or that injunctive relief would redress any ongoing or future injury. *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("[A]

35

party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.") (emphasis in original).

Perhaps when Travelport first declined to provide her employee-specific documents and records, Ms. Williamson might have had standing to compel disclosure of those documents (assuming of course that Travelport had such a fiduciary duty). But Ms. Williamson alleges that she was able to send her W-2 forms to Travelport to resolve the final average compensation dispute, so there is no reason to compel Travelport to now produce documents reflecting her final average compensation. And any warning at this point would be futile, as Ms. Williamson already knows that while Travelport maintained and provided her "Pensionable Earnings History" data and "Total Benefit Service" data, it did not maintain all of her employee-specific salary records. *See* D.E. 16 at ¶ 44; D.E. 4-14. As far as her other claims, to the extent that they require maintenance or disclosure of administrative documents, we have already remanded for *de novo* review under the first step of *Blankenship* on the full administrative record. Accordingly, there is no possible prospective injury that equitable relief could remedy, other than the potential recalculation of Ms. Williamson's benefits based on new source documents. We therefore do not need to address whether Ms. Williamson stated a plausible claim on the merits for breach of fiduciary duty.

36

## VI

The district court ruled that an alternative basis for dismissal was that the complaint was an impermissible shotgun pleading. We disagree.

We have identified four categories of shotgun pleadings, two of which are relevant here. The first is a complaint with multiple counts where "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* Ms. Williamson's complaint does not fall under either category.

First, each claim for relief in the complaint does not indiscriminately incorporate *all* of the factual allegations set forth in the prior claims for relief. Each claim incorporates different paragraphs and, thus, "[t]he allegations of each count are not rolled into every successive count on down the line." *Id.* at 1324. Ms. Williamson's complaint is therefore not "tantamount to a one-count complaint." *Turbeville v. Fin. Indus. Regulatory Auth.*, 874 F.3d 1268, 1275 n.7 (11th Cir. 2017).

Second, although the complaint does include extensive details and factual allegations regarding the five-year dispute—and perhaps not every detail is entirely material—most allegations are germane. The lengthy descriptions about the

37

communications between Ms. Williamson and Travelport, for example, are relevant to her allegation that she made six document requests that Travelport failed to comply with in violation of § 1132(c). Though that claim ultimately fails, that does not mean her allegations were irrelevant, and it does not doom the entire complaint. Similarly, the claim that Travelport miscalculated benefits necessarily involved extensive details about Ms. Williamson's employment history, which she needed to explain to demonstrate her entitlement to additional months-of-service credits. And, as noted above, the extensive discussion about Travelport's earlier miscalculation is relevant insofar as it lends credibility to the allegation that Travelport miscalculated other aspects of her benefits. Although the facts are voluminous, overall they are not "conclusory, vague, and immaterial."

## VII

The district court exercised its discretion not to award attorney's fees under § 1132(g)(1) based on its determination that all of Ms. Williamson's claims should be dismissed. We reverse that ruling, as we are remanding for further consideration of Ms. Williamson's claims for benefits.

## VIII

We affirm the dismissal of Ms. Williamson's claims under §§ 1132(a)(2) and (c), but reverse the dismissal of Ms. Williamson's claims for benefits under

§ 1132(a)(1)(B) and attorney's fees under § 1132(g)(1), and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**